**ALICIA LEDUC MONTGOMERY, OSB 173963**
Email: alicia@leducmontgomery.com
**LEDUC MONTGOMERY LLC**
2210 W Main Street, Suite 107 #328
Battle Ground, Washington 98604
Telephone: (503) 500-5695
www.leducmontgomery.com

**MICHELLE R. BURROWS, OSB 861606**
Email: michelle.r.burrows@gmail.com
**LAW OFFICE OF MICHELLE R. BURROWS P.C.**
16869 SW 65th Ave. #367
Lake Oswego, Oregon 97035
Telephone: (503) 241-1955
www.oregoncivilrights.com

Attorneys for Plaintiff John Malaer

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JOHN LEE MALAER,<br><br>  Plaintiff,<br><br>v.<br><br>GEOFFREY KIRKPATRICK, an individual; MICHAEL WULFF, an individual; OMAR ESQUEDA, an individual; ASHLEY MCFALL, an individual; CITY OF MEDFORD, a government agency; JACKSON COUNTY, a government agency; NATHAN SICKLER, in his individual and official capacity; and BRIAN KOLKEMO, an individual,<br><br>  Defendants. | Case No. 1:20-cv-00049-CL<br><br>**PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER** |

1 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………………………2
CERTIFICATIONS……………………………………………………………………………..4
INTRODUCTION………………………………………………………………………………5
STANDARD OF REVIEW……………………………………………………………………..7
ARGUMENT……………………………………………………………………………………7
      A. Defendants' Motion is Untimely…………………………………………..7
      B. Plaintiff Is Entitled to Personnel Records of Officers in 4th Amendment
         1983 Cases …………………………………………………………………8
      C. State Law Privileges Do Not Apply to Discovery in Federal Question Cases …..11
      D. The City Already Waived Any Privilege of the IA File …………………………14
      E. Even If State Privilege Applied, the IA File Is Subject to Exception for
         Production……………………………………………………………………..16
CONCLUSION…………………………………………………………………………………19

# TABLE OF AUTHORITIES

Cases
*ACLU v. City of Eugene*, 360 Or. 269, 380 P.3d 281 (2016)………………………………...17, 18
*Agster v. Maricopa Cnty.*, 422 F.3d 836 (9th Cir. 2005)................................................... 11, 13
*Canton v. Harris,* 489 U.S. 378 (1989)................................................................................ 8
*Ceramic Corp of America v. Inka Maritime Corp*. 163 FRD 584 (C.D. Cal. 1995) ...................... 8
*City of Portland v. Oregonian Pub. Co.*, 200 Or. App. 120, 112 P.3d 457 (2005) ...................... 17
*D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp*., 315 U.S. 447 (1942) .................... 12
*DeSylva v. Ballentine*, 351 U.S. 570 (1956) ............................................................................ 12
*Everitt v. Brezzel,* 750 F. Supp 1063 (D. Colo. 1990) ................................................................ 8
*Frankenhauser v. Rizzo,* 59 FRD 339 (E.D. Pa. 1973)................................................................ 8
*Fraser v. United States*, 145 F.2d 139 (6th Cir. 1944), *cert. denied* 324 U.S. 849 ...................... 12
*Garrett v. City and County of San Francisco,* 818 F2d 1515 (9th Cir. 1987) .............................. 11
*Gregory v. Luisville,* 444 F.3d 725 (6th Cir. 2006) .................................................................... 8
*Guerra v. Board of Trustee*, 567 F.2d 352 (9th Cir. 1977)......................................................... 11
*Gwerder v. Besner*, 2007 WL 2916513, No. 07–335 (D. Or. Oct. 5, 2007).................................. 18
*Hampton v. City of San Diego,* 147 FRD 227 (S.D. Cal. 1993) ............................................... 8, 9
*Holmberg v. Armbrecht*, 327 U.S. 392 (1946).......................................................................... 12
*Hopkins v. Andaya*, 958 F2d 881 (6th Cir. 1992) ..................................................................... 8
*In re Pac. Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012) …………………………. 14, 16
*Joes v. DeRosa*, 238 FRD 157 (DNJ 2006) ............................................................................... 8
*Johnson v. McTigue,* 122 FRD 9 (SDNY 1986)......................................................................... 8
*Jordan v. MVD*, 308 Or. 433, 781 P.2d 1203 (1989)................................................................. 17
*Kerr v. United States District Court,* 511 F.2d 192 (9th Cir.1975), *aff'd,* 426 U.S. 394 (1976). . 11
*King v. Conde,* 121 FRD 180 (EDNY 1988) ............................................................................. 8
*King v. McCown*, 831 F2d 290 (4th Cir. 1987) ......................................................................... 8
*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978)......................................................... 8
*Oregonian Pub. Co. v. Portland Sch. Dist. No. 1J*, 144 Or. App. 180, 925 P.2d 591 (1996), *aff'd
    on other grounds*, 329 Or. 393, 987 P.2d 480 (1999)............................................................. 17

2 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

*Pitkin v. Corizon Health, Inc.,* 2017 WL 6496565 (D. Or. Dec. 18, 2017)……………..…..8, 13
*Roberts v. Legacy Meridian Park Hosp., Inc.*, 299 F.R.D. 669 (D. Or. 2014)……………8, 12, 17
*Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478 (D. Or. 2012) ………………………….14, 16
*Scouler v. Craig*, 116 FRD 494 (D. N.J. 1987) .............................................................................. 8
*Skibo v. City of New York,* 109 FRD 58, 62 (E.D.N.Y. 1985)...................................................... 8
*Spell v. McDaniel*, 591 F. Supp 1090 (E.D. N.C. 1984)............................................................... 8
*Taylor v. Los Angeles Police Department*, 1999 WL 33101661 at 4 (C.D. Cal 1999) ................ 9
*United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) ...................................... 14
*Univ. of Pa. v. EEOC*, 493 U.S. 182, 193, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) ................... 13
*Veracities PBC v. Strand*, 602 F. Supp. 3d 1354, 1356 (D. Or. 2022) ....................................... 14
*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25, n. 13 (9th Cir. 1981) ................. 14

### Statutes
ORS 181.854............................................................................................................................... 18
ORS 181A.674............................................................................................................... 11, 15, 17, 18
ORS 181A.674(3) ....................................................................................................................... 15
ORS 181A.674(4)(a) ................................................................................................................... 17
ORS 192.314(1) .......................................................................................................................... 17

### Other Authorities
Brian Bull, *Journalist April Ehrlich Sues Medford and Jackson County Officials Over 2020 Arrest*, KLCC (Sept. 28, 2022, 1:10 AM), https://www.klcc.org/crime-law-justice/2022-09-28/journalist-april-ehrlich-sues-medford-and-jackson-county-officials-over-2020-arrest....... 19

Emma James, *Shocking Moment Oregon Cop SLAPS Naked Wheelchair User, 60, Across the Face, Before Dumping Him on Floor of Cell to Wet Himself After He Got Chair Stuck in Grate and Threw Stones at Window to Summon Help*, DAILY MAIL (Sept. 15, 2022, 2:26 PM), https://www.dailymail.co.uk/news/article-11215941/Shocking-moment-Oregon-cop-SLAPS-naked-wheelchair-user-60-face.html ............................................................... 18

Ethan McReynolds, *Federal Civil Rights Lawsuit Filed Against JaCo Jail Over Treatment*, KOBI-TV NBC5 / KOTI-TV NBC2 (Sept. 15, 2022), https://kobi5.com/news/jackson-county-faces-lawsuit-over-jail-treatment-195620/................................................................................... 18

Governor Tina Kotek Announces Her First Actions to Address Housing and Homelessness Crisis in Inaugural Address, OFFICE OF THE GOVERNOR (Jan. 9, 2023), https://www.oregon.gov/gov/news/Pages/2023-01-09-governor-tina-kotek-announces-her-first-actions-to-address-housing-and-homelessness-crisis-in-inaugural-address.aspx ............. 19

*Jackson County Deputy Accused of Slapping Disabled Man in Holding Cell*, FOX 26 KMVU (Sept. 14, 2022, 6:27 PM), https://www.fox26medford.com/jackson-county-deputy-accused-of-slapping-disabled-man-in-holding-cell/ ................................................................................. 18

*Journalist arrested while reporting on homeless encampment in Oregon*, U.S. PRESS FREEDOM TRACKER (Sept. 20, 2022), https://pressfreedomtracker.us/all-incidents/journalist-arrested-while-reporting-homeless-encampment-oregon/ ........................................................................ 19

Maxine Bernstein, *Video Shows Southern Oregon Sheriff's Deputy Slapping Disabled Homeless Activist in Wheelchair*, THE OREGONIAN (Sept. 14, 2022, 5:50 PM), https://www.oregonlive.com/crime/2022/09/video-shows-southern-oregon-sheriffs-deputy-slapping-disabled-homeless-activist-in-wheelchair.html; ....................................................... 18

Oregon Commission on Statewide Law Enforcement Standards of Conduct and Discipline, Public Testimony (Sept. 14, 2022) https://justice.oregon.gov/lesc/ ........................................ 19

3 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

Patrick Reilly, *Oregon Deputy Caught Attacking Paraplegic Activist While in Custody*, N.Y. POST (Sept. 15, 2022, 7:43 PM), https://nypost.com/2022/09/15/paraplegic-man-slapped-in-the-face-by-oregon-deputy-while-in-custody/ .................................................................................. 18

Rules

F.R. Evid. 501 ........................................................................................................................ 11
F.R. Evid. 501 Notes of Committee on the Judiciary, House Report No. 93–650 ................ 12
F.R. Evid. 501 Notes of Committee on the Judiciary, Senate Report No. 93–1277 .............. 12
FRCP 26(b)(1) .......................................................................................................................... 8
FRCP 26(c)(1) ........................................................................................................................... 7
FRCP 26(c)(2) ........................................................................................................................... 7
FRCP 45 (d)(3)(A). ................................................................................................................... 7
FRCP 45 (d)(3)(A)(iii) .............................................................................................................. 7
FRCP 45(d)(3)(C) ..................................................................................................................... 7

Treatises

23A Fed. Prac. & Proc. Evid. EVID R 501 (1st ed.) ............................................................... 12
9A Wright & Miller, Federal Rules and Procedure §2407 Practice Under Original Rule 43—Effect of Privileges, (3d ed.) ............................................................................................. 12
C. A. Wright, Federal Courts 251–252 (2d ed. 1970) ............................................................ 12
Restatement (Third) of the Law Governing Lawyers § 76 (2000) ......................................... 16

## CERTIFICATIONS

In compliance with LR-7, the parties made a good faith effort through emails and a 2-hour phone conference in January 2023 to resolve the dispute and have been unable to do so. The parties agreed Plaintiff would first respond to the City's motion to quash and obtain the Court's ruling to determine if filing motions to compel against third parties would be necessary.

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) and the Court's November 14, 2023 email because it contains 15 pages and 4,896 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and certificates of counsel.

///

///

///

4 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

## INTRODUCTION

Plaintiff John Malaer seeks to compel the City of Medford to produce the full Medford Police Department ("MPD") Internal Affairs investigation file ("IA File") regarding Plaintiff's arrest, transport, and jailing on July 11, 2019, which is the basis of Plaintiff's civil rights lawsuit. The City produced parts of the IA File to Plaintiff in discovery, and released the full IA File to multiple outside agencies, but refuses to produce the IA File's Narrative Report drafted by Defendant Kirkpatrick ("Kirkpatrick Report") to Plaintiff.  Dkt. 165.

Four Medford police officers were involved in Malaer's arrest and transport, all of whom are Defendants in this case: Supervising Sgt. Geoffrey Kirkpatrick, Officer Omar Esqueda, Officer Michael Wulff, and Officer Ashlee McFall (formerly Scottow).  Dkt. 144 (Amended Complaint).  Video shows MPD and jail deputies removed Malaer from his wheelchair, and left him naked on the floor lying in urine and without access to catheters, his medication, or drinking water for over five hours.  Dkt. 81, ¶ 14, Ex. 5 (JC000059-61 Pat Down Videos and Audio, JC000062 Booking Video, JC000063-64 Holding Cell Video and Audio, JC000065-66 Further Holding Cell Videos).  MPD officers Wulff and McFall were present and watched abuse to Malaer inside the jail, but took no action to intervene or report the conduct.  *Id*., Ex. 5 (JC000058 Sally Port Video, JC000059-61 Pat Down Videos and Audio, JC000062 Booking Video).

Malaer made at least four complaints to the City alleging misconduct and ADA violations by law enforcement regarding his July 11-12, 2019 arrest, transport, and jailing.  LeDuc Decl., Ex. A (July 25, 2019 Malaer Administrative Complaint); Ex. H (July 18, 2019 Budreau Interview Body Camera Video ); Ex. M (July 2019 MPD Sgt. Mak Call); Ex. N (July 27, 2019 Malaer-Sjothun Email).  Kirkpatrick was chosen by MPD to conduct the internal affairs investigation of Malaer's complaints. Ex. M; Ex. C.  Kirkpatrick was tasked with investigating

5 – PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND
MOTION FOR PROTECTIVE ORDER

himself. Kirkpatrick compiled evidence in an IA File and wrote the IA Kirkpatrick Report. Kirkpatrick issued a letter "exonerat[ing]" the City and closing the investigation. Ex. C.

To date it is unclear what steps Kirkpatrick took to conduct the IA Investigation, what information Kirkpatrick obtained or relied upon in conducting the investigation, who participated in the investigation, what the conclusions in Kirkpatrick's report were premised upon, and what the actual scope of Kirkpatrick's IA Investigation entailed. The City's own witnesses and documents produced in discovery provide conflicting information on these points, including Kirkpatrick asserting in the IA Disposition Letter that he interviewed the officers involved, but those same officers testifying in deposition that they were never interviewed. Kirkpatrick's Disposition Letter also stated he "reviewed video footage and complied [sic] documents of the incident in question," *id*., but correspondence suggests Kirkpatrick did not review the body camera footage from the arresting officer McFall, nor any of the video footage from the jail, during which Kirkpatrick, Wulff, and McFall were present while law enforcement handled and abused Malaer and his property. Ex. J (Jan. 24, 2023 Mitton Email).

The Court previously heard informal argument regarding the City IA File during a Rule 16 conference, issuing a 3-page opinion following *in camera* review of the Kirkpatrick Report. The Court denied Plaintiff the full IA File using a balancing test based on Oregon state statutory privilege, though it ordered the information was available to Plaintiff through other means. The Court did not have full formal briefing on the issue. Dkt. 159; LeDuc Decl., Ex. P.

In discovery Plaintiff learned Jackson County Sheriff's Office, OSP, Jackson County District Attorney's Office, and Klamath County District Attorney's Office all received copies of the City IA File. LeDuc Decl., Ex. Q (January 24, 2023 Email); Ex. D (Proulx Dep. Trans.); Ex. E (OSP Report); Ex. F (Whipple Dep. Trans.); Ex. G (County IA 990 Report). The Parties

6 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

learned in depositions in December 2022 and January 2023 that the MPD IA File was directly relied upon by the Jackson County Sheriff's Office and the Oregon State Police ("OSP") in investigating misconduct by Jackson County Sheriff's Deputies against Malaer inside the jail. *Id*. Plaintiff subpoenaed OSP, Jackson County District Attorney's Office, and Klamath County District Attorney's Office to obtain the City IA File, but the City instructed those entities not to comply, and now seeks to quash the subpoenas. LeDuc Decl., ¶ 5.

## STANDARD OF REVIEW

Under FRCP 45 (d)(3)(A)(iii), a party may move the court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" The court may, instead of quashing or modifying a subpoena, order appearance and production under specified conditions. FRCP 45(d)(3)(C). Under FRCP 26(c)(1), a "party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery. FRCP 26(c)(2).

## ARGUMENT

### A. Defendants' Motion is Untimely

A motion to quash must be "timely." FRCP 45 (d)(3)(A). The rule requires an objection within 10 days. Plaintiff's subpoenas to Oregon State Police and Klamath County were served on November 7, 2022, and the subpoenas to Jackson County District Attorney's Office and Oregon Department of Justice were served on December 29, 2022. LeDuc Decl., ¶ 5. The City Defendants never moved to quash then. Doing so now is untimely.

///

///

7 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

x

## B. Plaintiff Is Entitled to Personnel Records of Officers in 4th Amendment 1983 Cases

The City's IA File is discoverable by Plaintiff in this case because it is directly relevant to the claims and defenses at issue. FRCP 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Courts construe Rule 26(b)(1) "broadly." *Roberts v. Legacy Meridian Park Hosp., Inc.*, 299 F.R.D. 669, 671 (D. Or. 2014). Rule 26 "encompass[es] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Pitkin v. Corizon Health, Inc.,* No. 3:16-CV-02235-AA, 2017 WL 6496565, at *2 (D. Or. Dec. 18, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

The law is well established that police officers' personnel files and history of conduct as police officers is eminently relevant and discoverable in civil rights cases arising from police misconduct under 42 U.S.C. 1983. *Canton v. Harris,* 489 U.S. 378 (1989); *Gregory v. Luisville,* 444 F.3d 725 (6th Cir. 2006); *Joes v. DeRosa*, 238 FRD 157, 163-164 (DNJ 2006); *Hampton v. City of San Diego,* 147 FRD 227, 229 (SD Cal 1993); *Hopkins v. Andaya*, 958 F2d 881 (6th Cir 1992); *Everitt v. Brezzel,* 750 F. Supp 1063, 1067 (D. Colo. 1990); *King v. Conde,* 121 FRD 180 (EDNY 1988); *Scouler v. Craig*, 116 FRD 494 (DNJ 1987); *King v. McCown*, 831 F2d 290 (4th Cir. 1987); *Johnson v. McTigue,* 122 FRD 9 (SDNY 1986); *Skibo v. City of New York,* 109 FRD 58, 62 (EDNY 1985); *Spell v. McDaniel*, 591 F. Supp 1090 (EDNC 1984); *Frankenhauser v. Rizzo,* 59 FRD 339 (E.D. Pa. 1973).

Similarly, files relating to internal affairs investigation of law enforcement officers, particularly where those investigations concern truthfulness and honesty, are discoverable, as such files go to the heart of the integrity of the arrest and confinement. *See Ceramic Corp of America v. Inka Maritime Corp*. 163 FRD 584, 589 (C.D. Cal. 1995); *Hampton v. City of San*

*Diego,* 147 FRD 227, 229 (S.D. Cal. 1993) (police hiring documents relevant to credibility, notice to employer, ratification by supervisor and motive of the officer); *Taylor v. Los Angeles Police Department*, 1999 WL 33101661 at 4 (C.D. Cal 1999) (complaints against officers may show among other things, the character or proclivity of such officers toward violent behavior or possible bias). These cases provide civil rights plaintiffs access to records with no restriction as to whether the defendant officer was exonerated or whether the misconduct claims were founded.

The City argues the IA File is only relevant to whether MPD Defendants committed a use of force against Mr. Malaer. This is incorrect. The Kirkpatrick Report is directly relevant because it concerns claims of constitutional violations against Malaer by Defendants during the course of his arrest, transport, and jailing on July 11, 2019, and these actions form the basis of Malaer's 1983 and ADA claims in this case. LeDuc Decl., Ex. A (Malaer Administrative Complaint to MPD); Ex. B (Kirkpatrick Dep. Trans.); Ex. C (Kirkpatrick IA Disposition Letter). The City IA File was relied upon by both OSP and the Jackson County Sheriff's Office in investigating and forming conclusions about misconduct against Malaer by Defendant Kolkemo specifically. Ex. D (Proulx Dep. Trans.,); Ex. E (OSP Report); Ex. F (Whipple Dep. Trans.); Ex. G [Redacted]. The City IA investigation involved Sgt. Budreau photographing injuries to Malaer's body images and video are material evidence of Plaintiff's damages. Ex. H (Budreau Body Camera); Ex. I (Budreau Bruise Photos). The Kirkpatrick Report relied upon this same evidence, and its analysis and conclusions are relevant to this case. Ex. J (Jan. 24, 2023 Mitton Email); Ex. C (IA Disposition Letter).

Moreover, the officers' credibility is at issue regarding all City claims; as well as some of the County claims, and is implicated by the Kirkpatrick Report. The City argues the Kirkpatrick Report should be withheld to promote candor during investigations, Dkt. 165 at 3, and

9 – PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER

Kirkpatrick stated in the IA Disposition Letter he "interviewed all parties involved," yet Esqueda and Wulff testified they were never interviewed by Kirkpatrick. LeDuc Decl., Ex. C (IA Disposition Letter); Ex. K (Esqueda Dep. Trans., 10:4-11:18; 81:4-85:19), Ex. L (Wulf Dep. Trans., 56:12-57:3). The Kirkpatrick Report is necessary to understand the veracity of statements made or relied upon by MPD during the investigation and arrest.

And Malaer's administrative complaint was not limited to allegations of use of force by MPD – it details allegations going to his ADA claims regarding his wheelchair, transport, and physical mistreatment, which are relevant to the City and County Defendant claims, damages, and addressing the defenses raised in this case. Ex. A. Malaer further describes being hit in the face by a law enforcement officer and that he suffered abuse that was witnessed by Wulff. *Id*. Camera footage shows Wulff and McFall interacting with Malaer and Jackson County Sheriff's Deputies inside the jail, but did not turn on their body cameras. Ex. L (Wulff Dep. Trans., 168:22-169:11); Dkt. 81, Ex. 5 (JC000058 Sally Port Video, JC000059-61 Pat Down Videos and Audio, JC000062 Booking Video). The allegations in Plaintiff's administrative complaint covered this interaction with MPD and the County Deputies, but based on the information gathered to date, it is unclear whether Kirkpatrick reviewed or considered this video footage or lack of body camera recording as a part of the IA Investigation.

Moreover, Malaer's administrative complaint was not the only complaint to the City about the July 11, 2019 arrest incident. Malaer complained to MPD Sgt. Mak by phone on or about July 16, 2019, made verbal complaints to Sgt. Budreau on July 18, 2019, and sent an email grievance to City Manager Brian Sjothun on July 27, 2019. Ex. M (Sgt. Mak Recorded Call); Ex. N (July 27, 2019 Email Complaint to City); Ex. H (Budreau Interview). Sjothun forwarded

10 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

the email complaint to MPD, but received no response.  Ex. O (Sjothun Dep. Trans., 37:6-14; 43:1-21; 46:18-47:4).  It is unclear which of Malaer's complaints informed the IA Investigation.

### C. State Law Privileges Do Not Apply to Discovery in Federal Question Cases

State law privileges do not apply in federal actions.  The City's attempt to rely on a state statute, ORS 181A.674, to prevent third party subpoena respondents from producing the IA File records in their possession, custody, or control is in error because state law privileges do not apply in federal question cases in federal court.[1]  The Ninth Circuit "has held that the personnel files are discoverable in federal question cases . . . despite claims of privilege."  *Garrett v. City and County of San Francisco,* 818 F2d 1515, 1519 n.6 (9th Cir. 1987) ("Defendants also contend that the sought documents are protected by state-created privileges. In a Title VII action, of course, the federal common law of privilege controls.  F.R. Evid. 501."); *Guerra v. Board of Trustee*, 567 F.2d 352 (9th Cir. 1977) (requiring production where "the ready availability of alternatives to protect confidentiality such as in camera disclosure of documents, sealing of records, use of assumed names where practical or deletion of names altogether, strict control over copies, the plaintiffs should be able to develop their case without damage to the records of the institution or the necessity to maintain them"); *Kerr v. United States District Court,* 511 F.2d 192, 197 (9th Cir.1975), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976).

Plaintiff's civil rights and disability claims in this case are based on federal statutes, and thus are governed by federal common law and federal rules of evidence regarding privilege and

---

[1] City Defendants incorrectly assert that "Plaintiff did not rely on any federal case law in the lead-up to the December 2nd Order, Plaintiff now asserts that this Court should have relied on federal case law instead of state statute for the applicable balancing test."  Dkt. 165 at 2.  Plaintiff expressly argued to the Court in advance of the Rule 16 conference that "The statute cited by the City as allegedly preventing disclosure of the IA file is a state public records law, it has no bearing on a defendant's federal court discovery obligations."  LeDuc Decl., Ex. P.

11 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

discovery. F.R. Evid. 501. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839–40 (9th Cir. 2005); F.R. Evid. 501 Notes of Committee on the Judiciary, House Report No. 93–650 (noting the intent of the rule to prevent forum shopping in civil actions founded upon a state-created right or defense, depending upon differences in the privilege law applied as among the state and federal courts); *see also* F.R. Evid. 501 Notes of Committee on the Judiciary, Senate Report No. 93–1277 (Further noting the rule's intent that "in criminal and Federal question civil cases, federally evolved rules on privilege should apply since it is Federal policy which is being enforced. [It is also intended that the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal question case.]").

The courts are not bound to incorporate state law privileges and should not in cases of a federal question. *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 471 (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply. *See* C. A. Wright, Federal Courts 251–252 (2d ed. 1970); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946); *DeSylva v. Ballentine*, 351 U.S. 570, 581 (1956); 9A Wright & Miller, Federal Rules and Procedure §2407 Practice Under Original Rule 43—Effect of Privileges, (3d ed.) ("state privilege law usually applies in diversity cases and federal privilege law usually applies in nondiversity cases"); 23A Fed. Prac. & Proc. Evid. EVID R 501 (1st ed.) ("There is, however, no provision generally adopting state-created privileges."); *Fraser v. United States*, 145 F.2d 139, 144 (6th Cir. 1944), *cert. denied* 65 S.Ct. 684, 324 U.S. 849, 89 L.Ed. 1409 ("a federal equity court is not necessarily bound to apply a state statute

12 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

giving added breadth to an evidentiary rule of privilege, when clearly it is inequitable to do so"). Judges in this federal district apply this approach. *See Roberts v. Legacy Meridian Park Hosp., Inc.,* 299 F.R.D. at 672 (noting federal common law controlled privilege determinations in federal civil rights case discovery and declining to apply an Oregon privilege statute regarding the documents at issue); *Pitkin v. Corizon Health, Inc.,* 2017 WL 6496565, at *3 ("The parties are in federal court, and plaintiffs' case involves both federal claims (Fourteenth Amendment asserted via 42 U.S.C. § 1983) and state claims (common law negligence, gross negligence, and wrongful death). I am bound by the law of the Ninth Circuit. Accordingly, no peer review privilege applies, regardless of any Oregon state statute to the contrary.").

As the Supreme Court recognizes, "if there is a 'smoking gun' to be found that demonstrates discrimination …, it is likely to be tucked away in [the state-privileged protected] files." *Univ. of Pa. v. EEOC,* 493 U.S. 182, 193, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990).  And courts note the importance of disclosure in cases implicating abuse during confinement, such as in the prison or jail context.  *See Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) ("In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the County's argument that such reviews will cease unless kept confidential by a federal peer review privilege.").  The City's privilege claim to keep the Kirkpatrick Report about his own conduct and those of his direct reports from Plaintiff relies entirely on a state law privilege, which is not part of the federal common law, and Defendants cite no authority to the contrary. Since the City Defendants claim a state law privilege regarding federal claims in federal court the judiciary should not recognize it.  There is no balancing test, and no evaluation to consider.

13 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

### D. The City Already Waived Any Privilege of the IA File

Plaintiff is further entitled to the Kirkpatrick Report because the City already waived any privilege of the IA File when it was shared with third-party entities in the normal course of business, and the City shared most of the IA File with Plaintiff. Ex. J. City Defendants suggest "there is no legal merit to this argument," Dkt. 165 at 7, but "in the Ninth Circuit, the party asserting a privilege has the burden of showing that the privilege applies and has not been waived." *Veracities PBC v. Strand*, 602 F. Supp. 3d 1354, 1356 (D. Or. 2022) (citing *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25, n. 13 (9th Cir. 1981).[2] "[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (quoting *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012)). Once a privilege is waived as to one outside party, it cannot be selectively re-applied as to others. *In re Pac. Pictures Corp.*, 679 F.3d at 1127-28 (rejecting theory of selective waiver of attorney-client privilege, as has "every other circuit to consider the issue since" it was first proposed); *Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478, 483 (D. Or. 2012) ("The Ninth Circuit, however, has since declined to adopt "selective waiver" as an exception to the attorney-client privilege doctrine."). The IA File was produced to third parties, a protective order is in place, and there is no compelling reason to prevent Plaintiff from reviewing the Kirkpatrick Reporting containing conclusions about the legality of police conduct during Malaer's arrest relied upon by investigators analyzing the misconduct at issue in this case.

---

[2] "The [Defendant] has disclosed the content of a privileged communication which is relevant and material to an issue in the case. Against this, the [Defendant]'s bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of nonwaiver" and noting "Indeed, when, as here, the privileged communication is voluntarily disclosed without objection by the asserting party's counsel and in the absence of surprise or deception by opposing counsel, it may be unnecessary to look beyond the objective fact of disclosure in ruling on the question of waiver."

14 – PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER

The City alleges the IA File was only forwarded once outside the City by Police Chief Clauson, but provides no supporting declaration or documents for this conclusion. And there is no evidence for the Court to conclude that the Police Chief "inadvertently" forwarded the entire IA File to the County Sheriff. Rather, the evidence suggest disclosure by MPD was done freely and intentionally during investigation of misconduct *by County Defendants* against Plaintiff, partially at the behest of the City Manager who expected law enforcement to investigate the claims. Ex. N (Sjothun Email); Ex. O (Sjothun Dep. Trans.); Ex. D (Proulx Dep. Trans.); Ex. F (Whipple Dep. Trans.); Ex. G [Redacted] Ex. Q (Jackson County Email).

The City further suggests that because the IA File was exchanged with other law enforcement entities, no waiver of privilege occurred because the entities were subject to ORS 181A.674. The City provides no support for this proposition, nor does the statute. The statute states "[a] public body may not disclose information about a personnel investigation of a public safety employee of the public body if the investigation does not result in discipline of the employee." ORS 181A.674(3). None of its exceptions cover third party investigations by third party law enforcement entities (only the public body itself, DPSST, and citizen review boards).

The City also attempts to argue that the exchange of the IA File is protected under the "common interest" or "joint defense" privileges. This post-hoc rationalization fails. These are attorney-client communications privileges – they do not protect business-as-usual communications with third parties. "Rather than a separate privilege, the "common interest" or "joint defense" rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other. However, a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. *Instead, the parties must make the communication in*

15 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

*pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten.*" *In re Pac. Pictures Corp. at* 1129 (citations omitted) (emphasis added); *Santella at* 483 (citations omitted.) ("the Ninth Circuit has adopted an even narrower exception to the waiver rule for "common interests" than has been articulated by the Federal Circuit.… Further, the exchange of information must have been intended to facilitate representation of either party"); Restatement (Third) of the Law Governing Lawyers § 76 (2000).[3]

      The City fails to identify any "common legal interest" between itself and the four other entities that obtained the IA File, nor the creation and nature of any actual agreement regarding communications under such.  All of the third-party entities received the IA File and completed their investigations before Malaer ever filed suit.  The District Attorney Offices and OSP have never been defendants in this lawsuit, there is no "joint defense" privilege to be invoked.  And the County and OSP investigations concerned misconduct *by Jackson County employees*, not the City or Plaintiff, and had no bearing on the City's IA Investigation. There was no pre-determined common interest arrangement between the City, County, OSP, Jackson County DA, and Klamath County DA at the time the IA File was shared.  Rather, it was exchanged by non-attorney employees in the course of completing their normal job duties of conducting investigations.

    **E.  Even If State Privilege Applied, the IA File Is Subject to Exception for Production**
The state law privileges of ORS 181A.674 do not apply in this case, as demonstrated above. But even if they did, the complete IA File falls within exceptions to the statute and must be

---

[3] "The rule in this Section permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers" and "The exchanged communication must itself be privileged. The doctrine does not create new kinds of privileged communications aside from client-lawyer and similar types of communications that are privileged … A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement within this Section."

16 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

produced to Plaintiff. *See Roberts*, 299 F.R.D. at 671. ORS 181A.674 permits disclosure of a personnel investigation of a public safety employee "[w]hen the public interest requires disclosure of the information." ORS 181A.674(4)(a). "[A] trial court must balance the public's interest in disclosure against the public body's interest in confidentiality, with the presumption in favor of disclosure." *ACLU v. City of Eugene*, 360 Or. 269, 280, 380 P.3d 281, 288 (2016). Here, the public's interest weighs strongly in favor of disclosure. Oregon has a "strong and enduring policy that public records and governmental activities be open to the public." *Jordan v. MVD*, 308 Or. 433, 438, 781 P.2d 1203 (1989). This policy is embodied in a statutory presumption that all Oregonians have "a right to inspect any public record of a public body in this state." ORS 192.314(1). "Disclosure is the rule and exemptions from disclosure are to be narrowly construed." *Oregonian Pub. Co. v. Portland Sch. Dist. No. 1J*, 144 Or. App. 180, 184, 925 P.2d 591, 594 (1996), *aff'd on other grounds*, 329 Or. 393, 987 P.2d 480 (1999).

In particular, there is a strong public interest in disclosing records involving alleged police misconduct. *City of Portland v. Oregonian Pub. Co.*, 200 Or. App. 120, 112 P.3d 457 (2005). In *City of Portland*, The Oregonian requested documents from the Portland Police Bureau related to officer discipline in response to a high-profile police killing, including an "after action memorandum" with a step-by-step analysis of the killing. *Id.* at 125–26. The City objected, arguing release could cause a chilling effect and prevent officers from speaking candidly within the Bureau. *Id.* at 124. The court rejected the argument and required the City to release the documents, finding the strong public interest in the "need to have complete confidence that a thorough and unbiased inquiry has occurred," greatly outweighed any state "speculation" that officer speech might be chilled. *Id.* at 127. That is particularly true in Malaer's case, where it appears no officers were actually interviewed by Kirkpatrick.

17 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

Additionally, "the public has a significant interest" in accessing the internal affairs documents of police departments. *Gwerder v. Besner*, 2007 WL 2916513, No. 07–335 (D. Or. Oct. 5, 2007) (quotations omitted) (rejecting City's Police Bureau's "chilling effect" argument regarding production of internal affairs documents under former state privilege statute ORS 181.854 – later renumbered to ORS 181A.674 – and stating "internal affairs documents, though possibly personal, ha[ve] a distinct public character… and such information enables the public to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will."); *see also ACLU*, 360 Or. at 299–300 ("when it comes to complaints about the use of force and the review of those complaints, the public interest in oversight is particularly strong."). There is thus a recognized public interest in disclosure of police internal affairs documents as a matter of Oregon law.

There is also proven public interest in Malaer's civil rights case in particular. This case received international media coverage after video of the abuse by Jackson County Sheriff's Deputies of Malaer inside the jail was published in an Oregonian article[4] in September 2022,

---

[4] Maxine Bernstein, *Video Shows Southern Oregon Sheriff's Deputy Slapping Disabled Homeless Activist in Wheelchair*, THE OREGONIAN (Sept. 14, 2022, 5:50 PM), https://www.oregonlive.com/crime/2022/09/video-shows-southern-oregon-sheriffs-deputy-slapping-disabled-homeless-activist-in-wheelchair.html; *see also Jackson County Deputy Accused of Slapping Disabled Man in Holding Cell*, FOX 26 KMVU (Sept. 14, 2022, 6:27 PM), https://www.fox26medford.com/jackson-county-deputy-accused-of-slapping-disabled-man-in-holding-cell/; Patrick Reilly, *Oregon Deputy Caught Attacking Paraplegic Activist While in Custody*, N.Y. POST (Sept. 15, 2022, 7:43 PM), https://nypost.com/2022/09/15/paraplegic-man-slapped-in-the-face-by-oregon-deputy-while-in-custody/; Emma James, *Shocking Moment Oregon Cop SLAPS Naked Wheelchair User, 60, Across the Face, Before Dumping Him on Floor of Cell to Wet Himself After He Got Chair Stuck in Grate and Threw Stones at Window to Summon Help*, DAILY MAIL (Sept. 15, 2022, 2:26 PM), https://www.dailymail.co.uk/news/article-11215941/Shocking-moment-Oregon-cop-SLAPS-naked-wheelchair-user-60-face.html; Ethan McReynolds, *Federal Civil Rights Lawsuit Filed Against JaCo Jail Over Treatment*, KOBI-TV NBC5 / KOTI-TV NBC2 (Sept. 15, 2022), https://kobi5.com/news/jackson-county-faces-lawsuit-over-jail-treatment-195620/.

18 – PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER

following public testimony before the Oregon Commission on Statewide Law Enforcement Standards of Conduct and Discipline on September 14, 2022.[5] And this lawsuit is occurring at a time when Oregon is experiencing crisis-level homelessness issues,[6] in the same jurisdiction where law enforcement are participating in the suppression of recording of law enforcement activity against homeless people in Jackson County.[7] These are issues of significant public concern, demonstrated by broad media coverage on these topics.

## CONCLUSION

The Court should deny the City's Motions and compel production of the IA File.

DATED: February 14, 2023      Respectfully submitted,

                                                  **LEDUC MONTGOMERY LLC**

                                                  By: */s/ Alicia LeDuc Montgomery*
                                                  Alicia LeDuc Montgomery, OSB 173963
                                                  alicia@leducmontgomery.com
                                                  (503) 500-5695

                                                  Attorney for Plaintiff John Malaer

## CERTIFICATE OF SERVICE

---

[5] Oregon Commission on Statewide Law Enforcement Standards of Conduct and Discipline, Public Testimony (Sept. 14, 2022) https://justice.oregon.gov/lesc/.

[6] *See* Governor Tina Kotek Announces Her First Actions to Address Housing and Homelessness Crisis in Inaugural Address, OFFICE OF THE GOVERNOR (Jan. 9, 2023), https://www.oregon.gov/gov/news/Pages/2023-01-09-governor-tina-kotek-announces-her-first-actions-to-address-housing-and-homelessness-crisis-in-inaugural-address.aspx.

[7] Brian Bull, *Journalist April Ehrlich Sues Medford and Jackson County Officials Over 2020 Arrest*, KLCC (Sept. 28, 2022, 1:10 AM), https://www.klcc.org/crime-law-justice/2022-09-28/journalist-april-ehrlich-sues-medford-and-jackson-county-officials-over-2020-arrest; *Journalist arrested while reporting on homeless encampment in Oregon*, U.S. PRESS FREEDOM TRACKER (Sept. 20, 2022), https://pressfreedomtracker.us/all-incidents/journalist-arrested-while-reporting-homeless-encampment-oregon/.

19 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

I hereby certify that a true copy of **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER** was served on the following parties on February 14, 2023 by email and electronic filing service to the following addresses:

Eric B. Mitton
Alicia M. Wilson
City Attorney
411 W 8th Street,
Medford, OR 97501
Eric.Mitton@cityofmedford.org
Alicia.Wilson@cityofmedford.org
Attorneys for Defendants City of Medford, Geoffrey Kirkpatrick, Michael Wulff, Omar Esqueda, and Ashlee McFall

Johan Pietila
Brett Baumann
Jackson County Counsel
10 S. Oakdale Avenue Rm 214
Medford, OR 97501
pietiljr@jacksoncounty.org
baumanba@jacksoncounty.org
Attorneys for Defendants Jackson County, Nathan Sickler, and Brian Kolkemo

DATED:  February 14, 2023      **LEDUC MONTGOMERY LLC**
                               By: */s/ Alicia LeDuc Montgomery*
                                   Alicia LeDuc Montgomery, OSB 173963
                                   alicia@leducmontgomery.com
                                   (503) 500-5695

                                   Attorney for Plaintiff John Malaer

20 – **PLAINTIFF'S RESPONSE TO CITY DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**