ERIC B. MITTON, OSB No. 065925
ALICIA M. WILSON, OSB No. 103397
City of Medford
411 W. 8th Street, Room 260
Medford, OR 97501
(541) 774-2020
Fax: (541) 774-2567
eric.mitton@cityofmedford.org
alicia.wilson@cityofmedford.org
Of Attorneys for City Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| JOHN LEE MALAER, <br><br> Plaintiff, <br><br> vs. <br><br> GEOFFREY KIRKPATRICK, an individual; MICHAEL WULFF, an individual; OMAR ESQUEDA, an individual; ASHLEY MCFALL, an individual; CITY OF MEDFORD, a government agency; JACKSON COUNTY, a government agency; NATHAN SICKLER, in his individual and official capacity; and BRIAN KOLKEMO, an individual, <br><br> Defendants. | Case No. 1:20-cv-00049-CL <br><br> **SUR-REPLY OPPOSING MOTION TO AMEND COMPLAINT** <br><br> By: City Defendants |

The City Defendants provide this sur-reply on the motion to amend complaint pursuant to the Court's permission from the hearing on April 4, 2023.

/ / /

/ / /

PAGE 1- SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

I.  **Introduction.**

Plaintiff's reply memorandum alleges in part that the Second Amended Complaint is needed because of a lack of discovery prior to filing the First Amended Complaint and also because of alleged discovery violations and alleged unprofessionalism by the City Defendants' attorneys. The City Defendants wish to set the record straight on a number of issues first raised in this reply, not only to refute the allegations of misconduct, but also to demonstrate that the new assertions made in the reply do not support the filing of the Second Amended Complaint.

II.  **The RVTD encounter is not "retaliation" by the City.**

Plaintiff's reply and the supporting declarations make numerous references to an interaction at the Rogue Valley Transit District (RVTD) bus station, including a copy of a Jefferson Public Radio (JPR) article entitled "Disabled man suing Medford police alleges retaliation at bus station." The allegation of "retaliation" is expressly made by Plaintiff's counsel in the video that Plaintiff's counsel provided to JPR, which was then republished to the general public through its article. (Mitton declaration, paragraph 6). The allegation that the City and its employees are taking enforcement action against a plaintiff and plaintiff's counsel as "retaliation" for attending depositions is an extremely serious allegation, and one that cannot go unanswered. The allegation of "retaliation" is not true.

The facts are not in dispute. Plaintiff was deposed in Brookings pursuant to this Court's Order of November 22, 2022. After his own deposition was complete, Plaintiff voluntarily chose to travel to Medford in January 2023 to watch the City's witnesses be deposed. After those depositions were complete, he had an interaction with a private company's bus driver who refused to let him back on the bus for the following reason (captured on video which can be seen at https://www.youtube.com/watch?v=rssVhGrqDoY ):

PAGE 2- SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

> Due to his behaviors the last time he rode my bus, he is not allowed on our busses again…there were multiple behaviors. First and foremost was when this bus is in motion, he was unhooking his scooter. And that is not allowed. That is a huge safety problem. Unhooking that, the verbal abuse, the cussing, all of that is not allowed on our bus.

(Mitton declaration, paragraph 2). Plaintiff and Plaintiff's counsel then confronted RVTD personnel. After a back and forth, RVTD, which is a separate entity from the City of Medford, contacted Medford Police. Medford Police responded to the scene only because RVTD asked them to respond. As shown in the video, the Medford Police personnel who responded spoke calmly to everyone present and then left without taking any enforcement action. The CAD for this call for service confirms that the response was at RVTD's request, and the call was closed without any enforcement action as "NECA" (No Evidence of Criminal Activity). If Plaintiff or Plaintiff's counsel has a concern with RVTD's policies, that is between them and RVTD.

Plaintiff's counsel raises concerns about how officers explained their ability to take enforcement action on property owned by another public entity at that entity's request. Again, no enforcement action was <u>actually</u> taken; Medford Police merely responded to a call for service and nothing more. Regardless, Plaintiff's counsel appears to be conflating two separate legal issues: what is a "public place" for purposes of state criminal laws (ORS Chapter 161 et seq), and what is a "public forum" for First Amendment purposes. Not all public places are public forums, and *Lee v. International Society for Krishna Consciousness*, 505 U.S. 830 (1992) recognized that a publicly-owned airport terminal was not subject to "public forum" rules, because its primary purpose was to facilitate mass transit. Regardless, any disagreement Plaintiff and Plaintiff's counsel have with RVTD's policies regarding the bus station has nothing to do with the City of Medford and has nothing to do with whether a Second Amended Complaint is warranted in this case.

PAGE 3- SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

### III.     Conferral on a motion regarding media contacts was not "intimidation".

In paragraph 13 of her declaration, Plaintiff's counsel makes reference to a conferral on a motion regarding media contacts which Plaintiff's counsel characterizes as an "intimidation tactic."  This attack on Defendants' counsel's motivation is not true.

In September 2022, after a substantial and sudden amount of media coverage over a case that had been pending for multiple years that point, Defendants' counsel conferred with Plaintiff's counsel over the issue.  Plaintiff's counsel denied fueling the recent media activity, stating that she had simply testified at a commission hearing and had not directly engaged with reporters.  As a result of that call, all attorneys signed a Joint Status Report stating:

> The Parties discussed recent media publicity around the case. None of the parties wants to try the case in the media instead of through the Court system.  Plaintiff's counsel represented that the information contained in the media publicity appeared to come from court filings and public testimony in other matters.

(Joint Status Report of October 7, 2022 (docket 145)).

Two things happened in close proximity to each other that caused Defendants' counsel to revisit this issue.  First, Plaintiff's counsel produced in discovery a document entitled "media plan", drafted by Plaintiff's counsel, talking about a "media push" including "publish the testimony video from the commission hearing".   (Mitton declaration, paragraph 8 and exhibit 2). Second, Plaintiff's counsel directly contacted JPR, prompting the publication of the article discussed in Section II above, including a video where Plaintiff's counsel refers to the interaction with MPD as "retaliation" and stating in a JPR interview that she had personally witnessed a lack of MPD training (an allegation at play in the case at bar).  Defendants' counsel raised concerns about the effect on the jury pool and Defendants' right to a fair trial if this sort of media coverage continued in this manner, and conferred on limitations going forward on such media engagement.

PAGE 4-  SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

Defendants' counsel was very clear that any proposed restrictions would be "fact-specific and case-by-case and not an all-or-nothing issue," but that discussions needed to be had. The attorneys did confer on this issue, and Plaintiff's counsel asked quite reasonably to see the proposed terms of any injunction before a motion was filed with the Court. Defendants' counsel agreed.

In further reading applicable case law after the conferral call with Plaintiff's counsel, it became evident that one factor the Court weighs is the proximity of the motion to a scheduled jury trial. Defendants' counsel has ongoing concerns about the effect of media coverage like this on potential jurors, but also does not want to file a motion before it is indisputably ripe for adjudication. If the City Defendants obtain summary judgment, this entire issue becomes a moot issue. If the City Defendants do not obtain summary judgment and trial is scheduled, there would be more conferral then. Regardless of how this Court would rule on such a motion, nothing about this exchange constitutes "intimidation."

### IV.   It is not "blatantly false" that the Livability Team started September 2019.

Plaintiff asserts that the City Defendants made "blatantly false" statements about the Livability Team's creation in September 2019, after the arrest at issue. Despite prior clarification by the Defendants, Plaintiff is still conflating two entirely separate programs with similar names, relying on emails from Defendant Wulff referring to "Livability" activities in 2018.

In late 2017, the City created the Neighborhood Livability Partnership, a monthly multi-department meeting to address drug houses in residential neighborhoods. It was not related to homelessness. A three-minute video published by the City in 2018 describes the program, interviewing law enforcement, planning, and legal staff about the efforts to combat drug houses and similar problem properties, and even showing Defendant Wulff at an NLP meeting at 0:25: https://www.youtube.com/watch?v=61_7CMH11VI

PAGE 5- SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

In September 2019, the City launched the Livability Team, whose primary assignment is homelessness matters, and is a full-time officer assignment instead of a monthly meeting. Media sources also confirm that this was a program that launched in September 2019, such as the September 26, 2019 KOBI article "How Medford's new 'livability team' is tackling homelessness on the greenway". (Mitton declaration, paragraph 10).

Defendant Wulff explained the difference between those two programs in his deposition, well in advance to Plaintiff's assertion in the reply memorandum that the Livability Team has been in continuous operation since 2018. (Mitton declaration, paragraph 11 and exhibit 3).

Plaintiff's exhibits do not state the contrary. Plaintiff's Exhibit 2, dated August 23, 2018, refers to the "<u>Neighborhood</u> Livability Team" which is addressing "chronic nuisance <u>properties</u>." (Emphasis added). Exhibit 3 dated July 18, 2018, refers to Defendant Wulff going to a "Livability Team <u>meeting</u>." (Emphasis added). Both of these are clearly references to a monthly roundtable meeting about chronic nuisance properties (i.e., the Neighborhood Livability Partnership that started in 2017), not a full-time officer assignment addressing homelessness (the Livability Team that started operation in September 2019). Plaintiff's assertion that the Livability Team started operation in September 2019 is not "blatantly false" as Plaintiff alleges, and certainly is not a basis to further amend the complaint.

**V.    Plaintiff's counsel's access to discovery prior to the First Amended Complaint.**

In paragraph 22 of her declaration, Plaintiff's counsel asserts that the Second Amended Complaint should be allowed because of an alleged lack of access to discovery prior to the filing of the First Amended Complaint on September 29, 2022. To the contrary, on May 10, 2023, approximately one week after Plaintiff came onboard, the undersigned voluntarily provided Plaintiff's counsel with an index of discovery that had happened in the case to date and said "please

PAGE 6-  SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

Medford City Attorney's Office
411 West 8th Street, Medford, OR 97501
(541) 774-2020

let us know if you are missing any of this information, and we can get it to you." (Mitton declaration, paragraph 12 and exhibit 4). The parties' joint status report filed at docket 114 on July 11, 2022 recognizes that "After Plaintiff retained counsel, the City Defendants provided informal discovery to Plaintiff's counsel."

One of the main new allegations (besides the *Blake/Bilodeau*-style claim) is the assertion that Plaintiff was transported in a dangerous manner. As shown above, Plaintiff's counsel had access to video of how Plaintiff was arrested and transported to jail in May 2022, well in advance of the First Amended Complaint. The City disagrees that the method in which Plaintiff was transported was dangerous, but regardless, no new information on this issue was first discoverable by Plaintiff after filing the First Amended Complaint. If Plaintiff had brought this claim in the First Amended Complaint, instead of first asserting it after discovery had closed, that allegation would have informed the scope of discovery that the City Defendants sought.

### VI. Generalized conferral on "systemic issues" in June 2022 does not warrant amendment of the complaint in April 2023.

In Plaintiff's reply, Plaintiff argues that because Plaintiff conferred on a potential amendment to add a Section 1985 conspiracy against civil rights action, or a RICO action, in June 2022, the current amendment should be allowed. The City Defendants disagree. Those are different claims for relief than a *Blake v. Grants Pass* claim, and nothing about the quoted discussion in June 2022 put Defendants' counsel on notice that they needed to do discovery on a *Blake v. Grants Pass*-style claim individual to Plaintiff.

### VII. Plaintiff's continuing attacks on the City's Attorneys are unwarranted.

Plaintiff's reply memorandum to the motion to amend complaint makes a number of direct accusations of unprofessionalism against the City Attorney's Office. This is not an isolated

PAGE 7- SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

occurrence; Plaintiff's counsel made similar allegations in other recently-filed documents such as the Burrows declaration at docket 197. Although these allegations are irrelevant to the question of whether the Court should allow the filing of the Second Amended Complaint, the undersigned cannot allow these allegations to remain unanswered any longer.

Plaintiff's counsel asserts that the City Defendants unprofessionally refused to produce discovery in various respects. To be clear, the City Defendants produced <u>voluminous</u> document discovery, including but not limited to all the video evidence from this interaction with Plaintiff and several other incidents, all the Continuum of Care meeting minutes that the City could locate for a two-year window, approximately 1,500 emails using a multitude of different search parameters requested by Plaintiffs, approximately 130 separate Livability Team "weekly update" reports covering multiple years of the team's operation, and other documents. There were some specific requests that the City felt were overbroad or unduly burdensome or not reasonably calculated to lead to the discovery of admissible evidence, which always happens in cases. But the documents Plaintiff filed paint the picture that Plaintiffs received effectively nothing from the City in discovery besides objections, and that is simply not true.

Furthermore, at the end of discovery, a formal agreement was reached between Plaintiff's counsel and the City Defendants' counsel as to the remaining loose ends as follows:

/ / /

/ / /

/ / /

/ / /

> This email confirms a conversation I just had with Michelle Burrows.
>
> As for emails, the City will search the keyword "Malaer" and the misspellings requested by Alicia Leduc Montgomery for calendar years 2017, 2018, and 2019. We will pull out the privileged emails and produce the remainder. We will not give a third-party vendor access to the City's email server for the reasons Michelle and I discussed. We anticipate that these emails will be reviewed and produced by early next week.
>
> As for the Kirkpatrick IA memo currently being sought from third parties, the City will file a motion to quash by the end of Tuesday of next week.
>
> <u>Michelle and I agreed that if the City does these two additional things, it will fully resolve concerns about ongoing discovery with the City</u>.

(Email of January 26, 2023 (emphasis added)). The City fully performed under this agreement. The City does not feel that Plaintiff's current allegations to this Court that the City's discovery efforts were unprofessional or insufficient are consistent with the parties' agreement.

In docket 197, Ms. Burrows states that "It is my opinion that conversing with Ms. Wilson is pointless most of the time." This is extremely unfair and inaccurate. Although Ms. Burrows has on multiple occasions asked to confer strictly with Eric Mitton instead of Alicia Wilson, and the City Attorney's Office has complied with those requests as a professional courtesy, the City Attorney's Office is a team and there is nothing that Ms. Burrows obtained through Mitton that she could not have obtained through Wilson. Ms. Wilson is the primary attorney working this case for the City, and the reason that a discovery objections generally have originated from Ms. Wilson instead of Mr. Mitton is not a question of differing standards, but simply because *Ms. Wilson has done most of the City's work on this case during that time frame*. Plaintiff's counsel accuses Wilson of "bullying," but Wilson is simply doing her job. For example, in an email Plaintiff's counsel sent the Court dated March 27, 2023, Plaintiff's counsel appears frustrated about a recent

formal request from Ms. Wilson that they correct a sworn declaration filed with this Court at Docket 193, in which Mr. Malaer testified under oath:

> The only reason I was in Medford on January 7, 2023 was because the City insisted the depositions of City Manager Sjothun, Defendant Sgt. Kirkpatrick, and Defendants Officers Wulff, Esqueda, and Scottow take place at the Medford Police Station. We deposed all of those Medford city employees January 4-6, 2023 in Medford inside the police station.

As the correction that Plaintiff's counsel provided to this Court admitted, (1) the depositions of Defendants were not at the police station but instead at a City Hall conference room, and (2) it was Plaintiff's counsel, not the City Defendants, who chose to conduct those depositions in person instead of via videoconference. If it was actually true that the City had compelled Plaintiff to travel to Medford, it arguably would have been a violation of this Court's November 22, 2022 Order. (Docket 158). Thus, Plaintiff's sworn statement was not only indisputably factually inaccurate but also material to the important issue of whether Defendants' counsel complied with this Court's Order of November 22, 2022. Those reasons, not "bullying," are reasons why the City Attorney's Office needed to formally seek a correction of Mr. Malaer's sworn declaration on this issue.

In docket 197, Ms. Burrows' declaration, she alleges that Mr. Mitton told her the City has taken certain positions related to internal affairs allegations because the police union requires it. Ms. Burrows has made this allegation to counsel more than once, and Mitton has already corrected her on this issue. (Mitton declaration, paragraph 18). To be clear, MPOA, the police union, is a separate legal entity with separate counsel, and if the City Attorney's Office was taking discovery positions at the direction of this separate legal entity, the City Attorney's Office would be violating its duty of loyalty to its actual client, the City of Medford. The allegation that the City Attorney's Office is taking its direction from the police union instead of representing the City's own interests is simply not true.

In docket 197, Ms. Burrows' declaration, she alleges:

> Mr. Mitton also shared with me his difficulties with Mr. Malaer noting Mr. Malaer is a racist and has used antisemitic slurs. Mr. Mitton is Jewish. I have never heard Mr. Malaer make antisemitic statements but I have heard him use racially inappropriate language. Mr. Mitton shared he felt strongly about Mr. Malaer because of Mr. Malaer's intolerance and use of inappropriately charged language. Mr. Mitton describes it much more pointedly in his Response in Opposition to File Second Amended Complaint. I infer Mr. Mitton has a strong negative bias against Mr. Malaer which is affecting Mitton's assessment of the case.

This allegation is regrettably lacking in context. At the time of that call, Plaintiff's counsel had recently produced to Defendants' counsel in discovery the document Bates-stamped 20939, where Mr. Malaer writes the following email to a friend:

> They speak in a distorted form of Latin distilled from Jewish law. This is the David and Goliath story except Goliath is the Jewish lawyers representing a corrupt city police force and corrupt sheriff by the names Eric Mitton, Joel Benton and Brett Bauman.

As described in the Mitton declaration filed herewith, Mitton was telephonically conferring with Ms. Burrows on another issue and as an aside, simply stated that it was frustrating to read stuff like that. Mitton did not ask her to take any action on the issue, but instead was just commiserating on some of the challenges of this case. That was it. That simple statement in passing to opposing counsel should not be used as evidence before this Court that Mitton "has a strong negative bias against Malaer which is affecting Mitton's assessment of the case."

Plaintiffs' counsel makes more general attacks on Defendants' counsel's professionalism, not tied to any specific incident. To the contrary, counsel for the City Defendants has on a number of occasions gone above and beyond standard expectations. When Plaintiff was *pro se* and wanted to depose Defendants, the City Attorney's Office located and scheduled a court reporter and videographer for the depositions Plaintiff wished to take (and rescheduled them each time Plaintiff postponed the deposition). When Plaintiff expressed concern over the cost of the court reporter

PAGE 11- SUR-REPLY REGARDING MOTION TO AMEND COMPLAINT

and videographer, the City Attorney's Office encouraged Plaintiff to consider depositions by written questions as a cost-free alternative. (Mitton declaration, paragraph 21). When Plaintiff's counsel came onboard and requested that the then-looming summary judgment oral argument be postponed so she could get up to speed on the briefing for that motion, the City Attorney's Office agreed to the postponement for Plaintiff's counsel's convenience, even though it meant that the motion's author, Ms. Hahn, never got to argue the first motion she had filed in federal court. (Mitton declaration, paragraph 22). When Plaintiff's counsel asserted in June 2022 that Plaintiff had relocated to Medford and was homeless on the streets of Medford, the City Attorney's Office offered to facilitate getting Plaintiff into housing. (Mitton declaration, paragraph 23 and exhibit 7). These are not the only examples, but are just some particular examples where the City Attorney's Office has actually stepped outside of normal expectations of defense counsel to try to be more accommodating to Plaintiff and Plaintiff's counsel than standard practice.

## VIII.   Conclusion.

The various new allegations and new exhibits from Plaintiff's reply in support of the motion to amend complaint do not provide a basis for further amendment. The fact remains that Plaintiff already had access to video evidence of the arrest and transport in May 2022, and that Defendants shaped months of voluminous discovery around the detailed allegations of the First Amended Complaint.

The City Defendants also appreciate the opportunity to respond to the various allegations made against us as attorneys in Plaintiff's reply and the supporting documents. We do not feel that the description of the City Defendants' counsel that Plaintiff provided to the Court in these recently-filed documents was a fair characterization, and we appreciate the opportunity to be heard on this issue.

DATED this 7th day of April, 2023.

                                      MEDFORD CITY ATTORNEY'S OFFICE

                                      /s/ Eric B. Mitton
                                      ALICIA M. WILSON, OSB No. 103397
                                      ERIC B. MITTON, OSB No. 065925
                                      City of Medford
                                      411 W. 8th Street
                                      Medford, OR 97501
                                      Of Attorneys for Defendants City of
                                      Medford, Kirkpatrick, Esqueda, Wulff, and
                                      McFall.