IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JOHN LEE MALAER,

          Plaintiff,

v.

SGT. GEOFFREY KIRKPATRICK, et al,

          Defendants.

Case No. 1:20-cv-00049-CL

**OPINION AND ORDER**

---

CLARKE, Magistrate Judge.

This is a civil rights case arising out of Plaintiff's encounter with law enforcement on July 11, 2019. Full consent to magistrate jurisdiction was entered on August 16, 2021 (#56).

The Court, after additional briefing, oral argument, and a more complete record, reconsiders the discoverability of the "IA Narrative Report," also referred to as the "Kirkpatrick Report," and the City defendants' Motion for Destruction and Additional Relief (#185).

For the reasons below, the Court now rules the Kirkpatrick Report is discoverable. The City defendants' Motion for Destruction (#185) is DENIED.

Plaintiff's counsel did not violate any Court order or professional standard by inadvertently obtaining the Kirkpatrick Report.

## BACKGROUND

Plaintiff filed his original, *pro se* complaint on January 9, 2020. At Plaintiff's request, the Court attempted to appoint pro bono counsel to assist Plaintiff with his lawsuit, but that attempt was unsuccessful (*see* dkt. ## 15, 16, 23). Shortly thereafter, the City of Medford defendants moved to stay the case pending the outcome of Plaintiff's related criminal proceedings. That motion was granted, and the case was stayed from April 1, 2020, to July 14, 2021. After the stay was lifted, several telephonic status conferences were held in the Summer and Fall of 2021 as the Court attempted to assist Plaintiff with his prosecution of the case and his pursuit of the appropriate discovery.

The County defendants and the City defendants each filed a motion for summary judgment (#78, #83) on January 18, 2022. Several motions to extend the time to respond and reply to these motions were granted. Shortly after the motions were briefed, a Notice of Appearance was filed by Plaintiff's counsel. A 60-day stay was entered so that Plaintiff's counsel could review the case. Plaintiff then moved to amend his complaint and re-open discovery; the Court granted these motions on September 28, 2022. The parties have engaged in depositions and other discovery since then, and they have requested the Court's assistance in resolving their dispute over the discoverability of the "Kirkpatrick Report."

The Kirkpatrick Report is the narrative report created by Sgt. Kirkpatrick during the City of Medford's internal investigation of Plaintiff's treatment by Medford police officers during the incident at Lumpy's bar on July 11, 2019. The Kirkpatrick Report was created prior to the final disposition report, which was produced to Plaintiff in discovery. After an informal discovery conference on November 11, 2022, the Court ordered the Kirkpatrick Report to be produced for

*in camera* review and ultimately determined that the document was not discoverable on December 2, 2022 (#159).

Previously, Plaintiff had subpoenaed Klamath County on November 7, 2022, seeking the Klamath County DA's charging decision letter regarding the prosecution of Defendant Kolkemo and the associated charging file, which had been referred to their office from the Jackson County DA's Office. On November 7, after receiving the subpoena, the Klamath County DA's Office called Plaintiff's counsel to advise that they didn't have the files requested. They indicated that the District Attorney had recently resigned and "was not the greatest at keeping records." They advised that the person who normally handled subpoenas was on leave, and they would review files and respond when they returned to work.

The City defendants filed a Motion to Quash on January 31, 2023, asserting that Plaintiff had disregarded the Court's December 2 Order by "continuing discovery attempts to obtain the [Kirkpatrick Report]," through subpoenas to other agencies such as the Oregon State Police and Oregon Department of Justice. The Court granted that motion on February 24, quashing any subpoenas to third parties that sought the Kirkpatrick Report (#169).

On March 7, 2023, Plaintiff filed a Status Report on Discovery (#174), informing the Court and the parties that the Kirkpatrick Report had been disclosed to Plaintiff through discovery provided by the Klamath County District Attorney's Office ("Klamath County). Plaintiff had followed up with Klamath County about the requested Kolkemo charging decision file, and when Klamath County sent the records, they included the Kirkpatrick Report. Nothing about the subpoena issued to Klamath County or the exchange with Plaintiff counsel indicates that Plaintiff was attempting to circumvent the Court's prior Orders. The disclosure was simply

inadvertent. Having reviewed the file Plaintiff now moves the Court to reconsider the prior Orders, deny the City's Motion, and hold that the Kirkpatrick Report is discoverable.

## DISCUSSION

### I. Upon reconsideration, the Kirkpatrick Report is discoverable under the terms of a protective order designating it "for attorney eyes only."

The Court's prior Order (#169), granting the City defendants' motion to quash, analyzed whether the Kirkpatrick Report should be held back from discovery as privileged under an Official Information Privilege balancing test. The balancing test is inherently factual and must be applied on a base by case basis. The Court agrees to reconsider how the balancing test applies to the Kirkpatrick Report in this case.

#### a. Legal standard for the Official Information Privilege

Federal common law recognizes a qualified privilege for official information. *Kerr v. United States District Court*, 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976). To determine whether the information sought is privileged, courts must conduct a case-specific balancing, weighing the potential benefits of disclosure against the potential disadvantages. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The factors include: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the

investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. *Estate of Bui v. City of Westminster Police Dep't*, 244 F.R.D. 591, 595-96 (C.D. Cal. 2007) (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 663 (N.D. Cal. 1987)). Privileges are narrowly construed, and doubts are resolved in favor of disclosure. *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

The party claiming the privilege must make a "substantial threshold showing." *Kelly*, 114 F.R.D. at 669. In particular, the party must provide a declaration from a responsible official in the agency that (1) attests that the agency generated or collected the information sought and has maintained its confidentiality; (2) states that the official has personally reviewed the materials in question; (3) identifies specifically the governmental or privacy interests that would be harmed by disclosure; (4) describes how disclosure subject to a carefully crafted protective order would still risk harm to those interests; and (5) projects the level of harm to those interests if disclosure would be made. *Id.* at 670.

### a. The ten balancing factors weigh in favor of disclosure.

First, the Kirkpatrick Report includes no statements by citizens, who might be discouraged from giving the government information in the future. Second, the Kirkpatrick Report includes no sensitive personal information for which disclosure would cause a detrimental impact. Third, the government proposes no policy change or improvement in the Kirkpatrick Report that might be chilled by disclosure. Fourth, the document contains both a compilation of the data of the incident and an evaluative summary, which includes Kirkpatrick's assessment that the officers at the scene had probable cause to arrest Plaintiff and that no officer appeared to strike him in the face at the scene or during the arrest. However, no sensitive or

confidential data or evaluation is contained in the Report. Fifth, Plaintiff's criminal case relating to the incident was dismissed, and no future criminal proceedings are reasonably likely. Sixth, the police investigation has concluded. Seventh, no intradepartmental disciplinary proceedings have arisen from the investigation. Eighth, Plaintiff's suit is non-frivolous and brought in good faith. Thus, the first eight factors all weigh in favor of disclosure.

The ninth factor considers whether the information sought is available through other discovery or from other sources. The Court previously held that this information was available through other sources, and this remains true to a certain extent. For instance, Plaintiff argues that the Kirkpatrick Report indicates that Sgt. Kirkpatrick did not interview certain officers about what happened at the scene of the incident at Lumpy's bar, while the final disposition report indicates that Kirkpatrick did interview the officers. Plaintiff could, and presumably did, find out whether the officers were interviewed by asking those officers questions in depositions or in interrogatories. However, to the extent that Plaintiff wants to impeach defendant Kirkpatrick at trial with his own contradictory statement, Plaintiff cannot do that with any other source. The City defendants argue that this would be extrinsic impeachment on a collateral matter, but admissibility is a separate consideration from discoverability. Thus, this factor weighs in favor of disclosure.

The tenth factor considers the importance of the information to the plaintiff's case. This is also a close call. After a careful reading of the First Amended Complaint and the Proposed Second Amended Complaint, the Court remains unconvinced that the Kirkpatrick Report holds much probative value as to whether or not the officers at the scene of Lumpy's bar had probable cause to arrest Plaintiff. However, in consideration of the potential impeachment value, and the fact that all of the other factors weigh in favor of disclosure, and resolving any doubt in favor of

disclosure,[1] the Court finds that, on balance, the ten factors above weigh in favor of disclosure and discoverability.

### b. The City of Medford has not made a substantial threshold showing to assert the privilege.

First, no declaration from a responsible official in the agency has been provided that attests that the agency has maintained the confidentiality of the information sought. All indications are that confidentiality was not maintained, considering at least two, and possibly four, other agencies were in receipt of the Kirkpatrick Report, including Jackson County, Klamath County, OSP, and Oregon DOJ. Without a declaration from an agency official, none of the other factors for this threshold showing can be met. Even if the Court considers the City Attorney's unattested filings, no specific harm to governmental or privacy interests based on the specific disclosure in this instance is identified, and the briefs do not indicate how disclosure subject to a carefully crafted protective order would still risk harm to any particular interests.

The City Attorney did raise the issue of generalized harm via the precedent set by the disclosure of an internal affairs confidential report, but no specific harm based on this particular disclosure was identified. The Court is not convinced that the factually intensive analysis in this case sets any such precedent. Additionally, the Court notes that the officer who conducted this investigation, Sgt. Kirkpatrick, was the supervising officer in charge of the team that arrested Plaintiff. Sgt. Kirkpatrick is also named in this cause of action as a defendant. While this is not a specific legal factor for the Court to weigh, it adds another distinguishing element that eliminates

---

[1] Other courts have determined that this balancing test should be "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 663. "Such pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process, the law places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits. The pre-weighting also is consistent with the related idea that privileges generally are to be narrowly construed, and that doubts about their applicability are to be resolved in favor of disclosure." *Id.* (citing *United States v. Nixon*, 418 U.S. 683 (1974); *United States v. Reynolds*, 345 U.S. 1 (1953)).

Page 7 – Opinion and Order

the potential for setting any broad precedent for future internal affairs documents to be automatically discoverable.

## ORDER

For the reasons above, the City of Medford's Motion to Require the Destruction of a Record (#185) is DENIED. The Court finds that the Kirkpatrick Report is not subject to the Official Information Privilege, and it is discoverable. Nothing about this Opinion indicates whether the Kirkpatrick Report is admissible as evidence, but the Plaintiff's counsel may retain the record, subject to a protective order, and designated "For Attorney Eyes Only."

IT IS SO ORDERED and DATED this 11 day of April, 2023.

MARK D. CLARKE
United States Magistrate Judge