**Andrea D. Coit, OSB #002640**
acoit@eugenelaw.com
**Emily M. Perkins, OSB #222553**
eperkins@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone: (541) 686-9160
Facsimile: (541) 343-8693
Of Attorneys for Defendant City of Medford

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DISTRICT

| | |
|---|---|
| JOHN LEE MALAER,<br><br>                    Plaintiff,<br><br>         v.<br><br>GEOFFREY KIRKPATRICK, an individual;<br>MICHAEL WULFF, an individual; OMAR<br>ESQUEDA, an individual; ASHLEY MCFALL,<br>an individual; CITY OF MEDFORD, a<br>government agency; JACKSON COUNTY, a<br>government agency; NATHAN SICKLER, in<br>his individual and official capacity; and BRIAN<br>KOLKEMO, an individual,<br><br>                    Defendants. | Case No. 1:20-cv-00049-MC<br><br>**DEFENDANT'S TRIAL MEMORANDUM** |

Defendant City of Medford submits the following trial memorandum.

## I.    INTRODUCTION

The City of Medford is the only remaining defendant in this case. Plaintiff's claims against Jackson County and its employees were severed for trial and have since settled for a sum of $1.3 million. Plaintiff's claims against the individual City defendants were not included in his Third Amended Complaint and therefore have been abandoned.

Page 1 – DEFENDANT'S TRIAL MEMORANDUM

## II.    SUMMARY OF MATERIAL FACTS

This case involves a simple, limited set of facts.

John Lee Malaer ("Plaintiff") was arrested on July 11, 2019, by officers from the Medford Police Department ("MPD"). Just prior to his arrest, Plaintiff was reportedly throwing rocks at the windows of Lumpy's, a local bar, and threatening the bartender with harm. When MPD officers initially encountered Plaintiff in the parking lot/sidewalk area of Lumpy's, Plaintiff was involved in a verbal altercation with a Rogue Valley Transit District ("RVTD") bus driver. Plaintiff's demeanor was aggressive when contacted by the MPD officers and remained aggressive throughout the entirety of the interaction. Plaintiff was arrested for disorderly conduct and menacing. This Court has determined that those charges were supported by probable cause.

Plaintiff is a paraplegic and was seated in an electric wheelchair at the time of his arrest. After being placed under arrest, Plaintiff was lifted from his wheelchair and placed in the back of a MPD vehicle for transport to the Jackson County jail. Plaintiff did not request transport in an alternative manner. He did not express concern for his physical safety in being placed in the backseat of the police vehicle for transport. Plaintiff's demeanor while in the police car continued to be aggressive, escalating to death threats and racist epithets.

MPD called for a police truck with an electric liftgate to respond to the scene. Once it arrived, the MPD officers loaded Plaintiff's electric wheelchair into the police truck. Plaintiff and his wheelchair were then taken to the Jackson County jail.

Upon arrival at the Jackson County jail, custody of Plaintiff and his wheelchair was turned over the Jackson County jail deputies.  Before entering the jail, Plaintiff asked a MPD officer to obtain the charger for his electric wheelchair from his home so the chair could be charged at the jail. MPD officers fulfilled this request.

Plaintiff had a backpack hooked to the back of his wheelchair at the time of his arrest. Per MPD policy and at the direction of Jackson County jail, the backpack was taken to the department searched incident to arrest, and logged into evidence. Plaintiff did not request anything from his backpack upon his transfer to Jackson County custody.

Page 2 – DEFENDANT'S TRIAL MEMORANDUM

### III.    PLAINTIFF'S CLAIM FOR RELIEF

Plaintiff asserts a single claim for relief, purporting to bring it under both the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213, (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796l (the "Rehabilitation Act"). However, as is affirmatively alleged in the Third Amended Complaint ("TAC"), those claims are treated by Plaintiff as legally interchangeable, are based on the same facts, and seek the same relief. TAC ¶¶ 85-106. For purposes of this brief, Plaintiff's claim is referred to as "Disability Discrimination."

Plaintiff asserts three separate theories of disability discrimination. Those are: wrongful arrest; failure to accommodate during arrest and transport; and failure to accommodate by not ensuring Plaintiff had all of his allegedly necessary medications and devices after transfer of his custody to the Jackson County jail. TAC ¶ 91(a), (b) and (c).

### IV.    PLAINTIFF'S REQUESTED RELIEF

Plaintiff has abandoned his claim for damages resulting from the alleged disability discrimination. He now seeks only injunctive relief.  Specifically, he seeks an injunction requiring the City to participate in "listening sessions" with disabled people to understand their lived experience; to partake in training of its employees in how to comply with disability protection statutes, and to conduct reviews of its policies to make sure they are legally compliant. Plaintiff asks that he be appointed by the Court as the monitor of the City's compliance with the Court's injunction and that the City be required to submit reports of its compliance with the injunction to his attorney, Alicia Montgomery-LeDduc.  TAC ¶ 95-107.

### V.    LAW AND ARGUMENT

#### A.    Plaintiff Lacks Standing to Pursue Injunctive Relief

##### 1.    There is No Case or Controversy to be Addressed through Injunctive Relief

As a threshold matter, Plaintiff must prove that he has standing to proceed on a claim for injunctive relief against the City of Medford. If he does not, his claim must be dismissed.  "It goes without saying that those who seek to invoke the jurisdiction of the federal courts must

Page 3 – DEFENDANT'S TRIAL MEMORANDUM

satisfy the threshold requirement imposed by Art. III of the Constitution by alleging an actual case or controversy." *Flast v. Cohen*, 392 U. S. 83, 94-101 (1968). Here, Plaintiff alleges that he "seeks prospective injunctive relief to prevent ongoing and future violations of federal disability law." TAC ¶ 96.   Specifically, as noted above, Plaintiff seeks prospective injunctive relief to prevent (1) being arrested for disorderly conduct when his actions are the result of his disability; (2) being transported to jail in the back of a police vehicle; and (3) to not be separated from his backpack when transferred to the custody of Jackson County. TAC ¶ 91. He seeks this relief allegedly for his protection and the protection of "individuals like Plaintiff who have mobility related disabilities." TAC ¶ 103.

To establish Article III standing for forward-looking injunctive relief, a plaintiff "must demonstrate a real and immediate threat that <u>they</u> will be wronged again in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added). Past exposure to illegal conduct does not show a present case or controversy to impose injunctive relief if unaccompanied by any continuing, present adverse effects. *Id.,* at 102.  Evidence that someone else may be subject to discrimination absent the injunction does not establish standing.

The threat of abstract future injury is not enough to prove an imminent threat of the same harm being repeated absent the injunction.  Rather, to establish a right to forward-looking injunctive relief, the plaintiff must show that "he is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct, and the threat of this injury must be both "real and immediate," not "conjectural" or "hypothetical." *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969).  Evidence of prior discrimination in the context of an arrest is insufficient to establish the right to forward-looking injunctive relief prohibiting discrimination in future arrests because "[i]t was to be assumed that [plaintiffs] will conduct their activities within the law, and so avoid prosecution and conviction, as well as exposure to the challenged course of conduct said to be followed by petitioners." *O'Shea v. Littleton*, 414 U. S. 488, 496-497 (1974).

In *L.A. v. Lyons*, 461 U.S. 95 (1983), the plaintiff, Lyons, claimed to have been subjected to an illegal chokehold by an officer and sought an injunction against the defendant City's use of

Page 4 – DEFENDANT'S TRIAL MEMORANDUM

such chokeholds in the future. In denying the injunction against future conduct, the Supreme Court found that Lyons had not established that it was likely he would again be subjected to a chokehold in the immediate future if the requested injunction was not granted.  The Court explained that evidence of the likelihood that other people may be subject to the chokehold in the future if the injunction was not imposed did not help establish standing for Lyons' to seek the injunction.  The Court stated:

> Lyons' standing to seek the injunction requested **depended on whether he was likely to suffer future injury from the use of the chokeholds** by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. **The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.**

*Id*., at 105 (emphasis added).

Plaintiff's claims of a wrongful arrest based on symptoms of his disability, unsafe transport to jail, and a failure to leave his backpack at the jail arise entirely from a single, past law enforcement encounter. To establish standing for an injunction against future conduct, Plaintiff has the burden to demonstrate that <u>he </u>will be subjected to these <u>same</u> alleged harms in the immediate future if the injunction is not placed.  This is a highly speculative exercise. Plaintiff must show that without the requested injunctive relief, it is likely he will again engage in aggressive behavior as a result of his alleged disability, drawing an emergency response from MPD. Then he must show that MPD officers will conclude his conduct is simply disorderly rather than the uncontrollable manifestation of his alleged disability. He must show he would be arrested, lifted from his wheelchair, placed in the back of a police vehicle, and turned over to the custody of the Jackson County jail and separated from his backpack. The evidence will show that

Plaintiff does not live anywhere near Medford, does not work in Medford, and has no family in Medford.  The anticipated future scenario in which Plaintiff would enjoy the benefit of an injunction against the conduct he claims he was subjected to in violation of the ADA is  quite unlikely.  In an effort to create standing to seek the requested injunction, Plaintiff has made allegations of an imminent risk of disability discrimination on behalf of himself and "someone similarly situated."  See e.g., TAC ¶¶ 101, 103.  Plaintiff is not a representative class member. His standing to bring this claim for injunctive relief is dependent entirely on his own likely experiences.

Plaintiff cannot present sufficient evidence demonstrating a concrete, realistic scenario under which there is a likelihood that he will be in this same situation and exposed to the same allegedly discriminatory acts by Defendant's officers in the immediate future.

### 2.    The RVTD Incident is Not Sufficient to Establish Standing for Prospective Injunction

In an effort to demonstrate a likelihood of a repeated injury if an injunction is not placed, Plaintiff will point to a 2023 interaction at the RVTD bus terminal.  Video that the parties stipulate is admissible shows a bus driver for The POINT bus service (not owned or operated by City) explaining why Plaintiff was not allowed back on her bus:

> Due to his behaviors the last time he rode my bus, he is not allowed on our busses again…there were multiple behaviors. First and foremost was when this bus is in motion, he was unhooking his scooter. And that is not allowed. That is a huge safety problem. Unhooking that, the verbal abuse, the cussing, all of that is not allowed on our bus.

The evidence will show that RVTD personnel called MPD to respond to the bus terminal, asserting that Plaintiff and his attorney, Alicia LeDuc-Montgomery, were trespassing because they refused to leave when asked to do so. The evidence will show that a MPD officer, Sgt. Doran, responded but, after speaking to Plaintiff, his attorney, and RVTD, she left the scene without taking any enforcement action. The video and Sgt. Doran's testimony will both demonstrate that the responding officers were calm and courteous.  The City's only action in this

instance was to politely decline Ms. LeDuc-Montgomery's demand that the City pay for alternate transportation for Plaintiff to return to his home on the Oregon Coast. The City was not involved in refusing to allow Mr. Malaer on the POINT bus. The POINT bus driver made that decision. Considerations When Injunction Against Public Entity

### 3. The Alleged Injury is not Redressable by the Requested Injunction

To establish Article III standing for forward-looking injunctive relief, a plaintiff must also demonstrate "redressability." The plaintiff must show that the alleged harm will be redressed by the requested injunction. If the harm will not be redressed through imposition of the requested injunction, there is no Article III standing to pursue injunctive relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The requested injunctive relief must directly address and alleviate the specific harm facing the plaintiff. *Id.* "Standing cannot be built on the psychological benefit to been-wronged plaintiffs from a network of rules." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998).

Here, Plaintiff alleges three specific injuries resulting from his encounter with Defendant's officers: (1) he was arrested for combative behavior rather than being taken home to calm down, (2) he was transported in a police vehicle that failed to safely secure him; and (3) he was not allowed to keep his backpack with him in the jail. TAC ¶ 91(a), (b) and (c). To remedy these past harms, Plaintiff seeks an injunction mandating the City: engage in listening sessions with disabled individuals; engage in "ADA and RA compliance" and crisis communication and de-escalation training; and conduct annual policy material reviews. TAC ¶ 105. The requested relief has no logical connection to the alleged harm.

To establish the requested redressability, Plaintiff must demonstrate that it is likely he will again engage in aggressive or combative behavior that is solely the result of an alleged disability. Second, he must be able to show that it is likely Defendant's officers will respond and will apply the mandated listening sessions and trainings or review of a policy to alter their discretionary decision-making from a lawful arrest to a home diversion. Further, this training or policy review must cause

Page 7 – DEFENDANT'S TRIAL MEMORANDUM

the officers to choose a different manner of transport and to override policy and practice to insist that they remain in charge of Plaintiff's medical care after transferring custody to the jail. The Supreme Court has explicitly rejected standing where the requested injunctive relief relies on a speculative chain of future contingencies to actually redress the alleged injury. *See Lyons*, 461 U.S. at 105-106. Because Plaintiff cannot establish a real and immediate threat that he will engage in combative behavior drawing police intervention again, general programmatic reforms like "listening sessions" or "crisis communication training" offer only a speculative, conjectural benefit. See also *Lujan*, 504 U.S. at 562 (Holding an injury is not redressable if the remedy's efficacy depends on an unpredictable sequence of future human choices.).

The injunctive relief also fails to satisfy the redressability requirement because it has no relevance to the alleged failure to accommodate Plaintiff's disability. Plaintiff claims he was harmed because Defendant lacked or failed to use a transport vehicle that was equipped to transport a person secured in a wheelchair. Reviewing policy manuals or conducting listening sessions cannot redress this alleged failure to accommodate. The only accommodation that would redress the alleged injury would be a mandated purchase of a secure police van that can transport an arrestee while seated in their wheelchair.  If the injunctive relief leaves the Defendant's fleet of transport vehicles unchanged, the remedy fails to provide any redress for the alleged harm.  Further, the Jackson County jail medical staff is responsible for determining the medical needs of an inmate and providing the inmate with necessary medication and medical devices. No amount of listening sessions, ADA training or policy review will change that division of responsibility or the policies of the Jackson County jail. The alleged injury is not redressable by the requested relief.

Finally, the Ninth Circuit has rejected the argument that generalized public education, informational mandates, or administrative training programs can establish Article III standing for an individual plaintiff. In *Civil Rights Education and Enforcement Center (CREEC) v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017), the Ninth Circuit emphasized that a plaintiff does not gain standing to demand broad institutional policy reforms or staff training programs unless

Page 8 – DEFENDANT'S TRIAL MEMORANDUM

those precise administrative fixes are directly tethered to a concrete, imminent threat of personal injury. The court explained that "[i]nstitutional training is a procedural mechanism, not a tangible remedy that secures a plaintiff's physical safety during a future arrest." *Id.,* at 1102.

Similarly, in *Wilderness Society v. Rey*, 622 F.3d 1251 (9th Cir. 2010), the Ninth Circuit held that procedural, informational, or programmatic adjustments (such as requiring a defendant to conduct annual reviews of materials or hold public listening sessions) cannot establish standing where they fail to provide a down-to-earth, concrete block against the underlying physical harm. *Id.,* at 1258-60. Just as in *Wilderness Society,* ordering MPD to hold listening sessions or review its policies provides only a generalized, abstract psychological benefit to the community. It does not ensure that this specific plaintiff will not suffer the same alleged harms in the future.

### 4.    The Requested Injunction is an Impermissible "Obey the Law" Injunction

Even if Plaintiff could establish a threat of future harm, the specific remedies requested – mandatory listening sessions, disability-oriented training, and annual policy material reviews – are procedurally defective. Under Federal Rule of Civil Procedure 65(d)(1), every order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."  The Ninth Circuit Court of Appeals disfavors "obey-the-law" injunctions because, regardless of how they are worded, they effectively command a defendant to comply with a statute or refrain from violating federal law. Broad mandates requiring a police department to retrain its workforce or review its structural policies to "ensure compliance with the ADA" fail the requirement of specificity. They do not outline clear, non-discretionary operational steps that officers must execute. *See Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126 (2006) (Reiterating that any injunction or restraining order must be specific in terms and describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained.").

Plaintiff's requested injunction would effectively be an order from this Court to the City of Medford to comply with the ADA, both in practice and in policy. Fed. R. Civ. Proc. 65

Page 9 – DEFENDANT'S TRIAL MEMORANDUM

prohibits the issuance of the requested injunctive relief. As such, the relief requested does not redress the alleged injury and Plaintiff has no standing.

### 5. The Requested Relief is Moot

The City will put on evidence that it has a Medford Police Department policy focused on ADA compliance – a policy which meets industry standards – and that officers are routinely required to review and acknowledge this policy. The City will put on evidence that officers are subject to "daily training bulletins," essentially pop quizzes on policy issues, and that DTBs include content about ADA practices. Furthermore, the City will put on evidence that it held lengthy trainings taught by the City Attorney's office regarding ADA issues in both 2023 and 2024, and that substantial portions of MPD's sworn officers attended those trainings.  Finally, the City will put on evidence that it has an ADA Coordinator who routinely corresponds with members of the disability community about questions, requests for accommodations, and grievances.  In fact, the evidence will show that Plaintiff himself has corresponded at length with this ADA Coordinator, referred to her as "the best," and served on a stakeholder panel that informed the City's ADA Self-Evaluation and Transition Plan.

### B. Plaintiff Cannot Prove a Violation of the ADA or Rehabilitation Act

Setting aside the issue of standing, if it were assumed Plaintiff has standing to pursue his claims for injunctive relief, he (1) cannot prove a violation of either the ADA or the Rehabilitation Act; and (2) he cannot establish a substantive right to injunctive relief.

To prove a claim under Title II of the ADA, a plaintiff generally must establish: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).

In *Sheehan v. City and County of San Francisco*, 743 F.3d 2122, 1232-33 (9th Cir. 2014) (reversed in part on other bases), the Ninth Circuit explained that in a police context, a disability discrimination claim must either arise out of a "wrongful arrest", where the arresting officer misperceives effects of the disability as criminal activity, or a "failure to reasonable accommodation", where the officers fail to reasonably accommodate the individual's disability in the course of investigation or arrest.

Plaintiff has alleged disability discrimination under both theories.

### 1.    Finding of Probable Cause for Arrest Precludes ADA Claim for Wrongful Arrest

Plaintiff asserts that he was arrested because of disorderly conduct that was caused by his disability. The alleged disability is PTSD that he claims caused him to engage in aggressive, threatening and offensive conduct when interacting with law enforcement.

To establish a violation of Title II of the ADA through the theory of wrongful arrest, a plaintiff must prove that they were subjected to discrimination "by reason of" their disability. 42 U.S.C. § 12132.   In *Sheehan,* the Ninth Circuit explicitly noted that a wrongful arrest claim under the ADA arises only when "police misperceive the lawful effects of a person's disability as criminal activity." *Id.,* at 1232. However, if an individual's outward behavior satisfies the objective standard of Fourth Amendment probable cause, that conduct is no longer legally "lawful" or benign in the context of policing.  As such, the existence of probable cause provides an absolute, lawful, and non-discriminatory explanation for the seizure of Plaintiff.

The Supreme Court has repeatedly affirmed that this statutory language requires a showing of standard, restrictive causation. When an officer possesses probable cause to believe a crime has been committed, the arrest is executed "by reason of" the suspected criminal activity, not "by reason of" the disability.

In this case, this Court has found there was probable cause for Plaintiff's arrest. *See* Docket 273, pages 9-11.  That finding is the law of the case and precludes Plaintiff's claim for disability discrimination based on a theory of wrongful arrest.

**2.      Plaintiff Cannot Prove the Alleged Disability under the Wrongful Arrest Theory**

Setting aside the bar of probable cause, Plaintiff cannot prove that he is "a person with a disability" for purposes of the wrongful arrest claim.  (Note that Plaintiff is claiming a disability of post-traumatic stress disorder (PTSD) that caused him to be disorderly.  His disability of paraplegia is not applicable to this theory.)

Plaintiff has admitted in his deposition that he has never been diagnosed with PTSD. He claims in this case, though, that he has PTSD that is triggered by the presence of police officers, and asserts that the behavior that led to his arrest were symptoms of this alleged PTSD. It is Plaintiff's burden to prove both the alleged disability and that his conduct was a result of that disability.

The evidence will show Plaintiff was disorderly, aggressive, offensive and out of control when interacting with the Lumpy's bartender and the RVTD bus driver *before officers arrived*. Likewise, several months previously, evidence will show he was disorderly with Providence Hospital staff before police arrived. In early 2018, he was intoxicated and disorderly at Porters Restaurant before officers arrived. In 2023, in the incident Plaintiff now claims was ADA retaliation by the City, he was disorderly with a bus driver for The POINT before law enforcement arrived.

Notably, Plaintiff was also deposed prior to retaining counsel and described his own mental state very differently than he now asserts. In his first deposition, he attributed his disorderly behavior toward the Lumpy's bartender to intoxication and frustration, never mentioning alleged PTSD triggered by law enforcement: "I was very frustrated, I was incontinent, and my battery was dead, and I was – and I was under the influence of alcohol, so I was not in the best mental state."  (First deposition, p. 12). He admitted to telling the bartender "that she was a f*cking c*nt and somebody needs to put her out of her misery."  *Id*. This is the call to which MPD officers were responding, and criminal behavior he was already engaging in before officers first arrived.

Page 12 – DEFENDANT'S TRIAL MEMORANDUM

During his first deposition, Plaintiff did not describe anything like PTSD when describing his interactions with MPD officers. To the contrary, he described being amused by seeing the first officer on scene approaching: "So then I looked back again and I see that, and then I recognized that he's a police officer and so I said 'who are you—no, what are—'what are you, Popo Bitch?' Excuse my comedy because I still find it humorous[.]" (First deposition, p. 16). Plaintiff also described joking around with Officer Esqueda about his name: "With the escalation that went down and we were even doing a little bit of joking because I didn't have my glasses, I couldn't see Officer Esqueda's name tag, and so I thought it said soda and so there was a little joke made that we call him Dr. Pepper". (First deposition, p. 22.) In addition, he testified under oath that his death threats and other disorderly conduct even after encountering the officers as a voluntary choice:

> A. …and a c*nt, yes, and I threatened his life and I threatened to shoot him in the head, all of that.
>
> Q. Why? Why did you do that?
>
> A. Because I was going to jail and I was pissed off. I was exercising my freedom of speech rights.

(First deposition, p. 21.)

Under these facts and with this prior sworn testimony, the evidence will show that Plaintiff's criminal behaviors were not involuntary PTSD symptoms triggered by the mere presence of law enforcement officers, but instead an alcohol-fueled voluntary choice.

### 3. Plaintiff Cannot Show he was Treated Differently Because of his Alleged Disability

Plaintiff must also show that he was treated differently than non-disabled people because of his disability. Officer Esqueda at one point did tell Plaintiff to leave, suggesting he would be let off with a warning if he quit being disorderly and departed. It should be noted that the request was not a facially unreasonable suggestion for Officer Esqueda to make to Plaintiff based on what he knew at the time, since Plaintiff was in fact moving his wheelchair around when officers first responded. Plaintiff admits that his wheelchair was mobile while interacting with officers, although its charge was very low. (Plaintiff's first deposition, pp. 6-7; 17-18.) However, when

Esqueda offered to just let Plaintiff leave, Plaintiff did not request assistance in leaving. To the

contrary, when Officer Esqueda asked Plaintiff if he needed assistance, Plaintiff responded:

> "No I don't need no help, I need you to go away and talk to that
> f*cking c*nt over there and leave me the f*ck alone…but you
> can't do that because you're a dumb-*ss f*cking Mexican."

(Esqueda bodycam, 2:55.) Esqueda testified at his deposition, "we help people when they ask for

help." (Esqueda deposition, p. 56.) Esqueda answered a hypothetical from Plaintiff's counsel

about what he would have done if Plaintiff had asked him for help, and Esqueda responded that

he would have called him a taxi. (Esqueda deposition, p. 70.) As noted below, a Plaintiff in an

ADA reasonable accommodation case has an affirmative duty to request reasonable

accommodation unless they are unable to request such accommodation. Because Plaintiff did not

request assistance or accommodation in leaving the property, and instead expressly rejected an

offer of assistance, this claim is not viable.

### 4.    Plaintiff Cannot Prove a Failure to Reasonably Accommodate

In a Title II claim grounded in a public entity's alleged failure to provide a reasonable

accommodation under 28 C.F.R. § 35.130(b)(7), the plaintiff bears the initial burden of

producing evidence both that they requested an accommodation and of the existence of a

reasonable accommodation. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir.2002). A public

entity may defeat a reasonable accommodation claim by showing "that making the modifications

would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. §

35.130(b)(7); *see Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir.1999).  A

narrow exception to the request-for-accommodation requirement exists when a person's

disability prevents them from asking for accommodation and the entity knows of the need for

accommodation. *Brown v. Lucky Stores*, 246 F.3d 1182, 1188 (9th Circuit 2001).  In this case,

the evidence will show that Plaintiff did affirmatively ask for one accommodation – retrieving

his charger for his electric wheelchair – showing that he was capable of asking for

accommodation. Plaintiff also testified in deposition that he has affirmatively made reasonable

Page 14 – DEFENDANT'S TRIAL MEMORANDUM

accommodation requests at least a half-dozen times. (Plaintiff's second deposition, p. 85.) These two facts prove that this exception does not apply. As such, all of Plaintiff's theories of discrimination, with the exception of wrongful arrest, are subject to Plaintiff's duty to request accommodation. As described above, he never made any affirmative request for accommodation to his arresting officers (besides retrieving the charger, which they did).

The Court found that summary judgment was not appropriate on the failure to accommodate claim because there was an issue of fact as to whether the City should have accommodated Plaintiff's disability (his paraplegia) by purchasing a specialized secure-transport wheelchair van or utilizing a non-secure taxi, and whether or not Plaintiff was subject to "greater injury or indignity…than other arrestees" when transported in a patrol vehicle (Order, p. 17). The evidence will show that Plaintiff did not request an accommodation regarding the manner of his transport to jail. The failure to request an accommodation when it is not apparent that one is needed is fatal to a failure to accommodate claim.

Regardless, Plaintiff's assertion that he experienced degradation and indignity during transport is not supported by the evidence. The video shows him sitting upright, secured in place securely, while he makes death threats to Officer Wulff and argues with Officer McFall about whether he needs to answer her questions about where he lives so that she can fill out his citation. He had the presence of mind to assert that he had no legal duty to answer her questions but never raised an issue of whether he should be sitting differently than he was, or whether he should be secured differently than he was, or whether he should be transported in a different vehicle. The fleet video shows that Plaintiff remained securely upright (while animatedly threatening to kill Wulff and Wulff's entire family) throughout the ride to the jail. Plaintiff displayed the core strength to animatedly move around while yelling in the car (for example, at 26:00-27:15). At 28:00, he is visibly able to move his torso around at will, a material distinction from the Plaintiff in *Sheehan*, who flopped over and was significantly injured during transport. No injury or indignity that is materially greater than that of any other suspect handcuffed in the back of a patrol vehicle is apparent from the face of this video.

Page 15 – DEFENDANT'S TRIAL MEMORANDUM

Furthermore, the apparent argument that he could have been reasonably accommodated by being transported to his home instead of jail is unpersuasive, because that exact fact pattern actually happened in February 2018. The evidence will show that MPD Officer Freeman arrested Plaintiff for being disorderly at Porters Restaurant, when he was intoxicated and screaming. Officer Freeman attempted to transport Plaintiff to his residence in Talent instead of jail, but upon arriving at Plaintiff's residence, Plaintiff became extremely uncooperative, screaming at another private citizen and hitting his head on the back of the seat. Given this escalation in behavior, Officer Freeman then transported Plaintiff to jail instead of leaving him at his residence. This transport occurred in the same type of vehicle as the instant case, and with Plaintiff strapped into the back seat in the same manner.

As a policy matter, it should not be a legally mandated reasonable accommodation for paraplegia to simply not arrest someone for making death threats, but even if it was, it was not reasonable here because that exact accommodation was attempted the prior year unsuccessfully.

### 5. Plaintiff Cannot Show a Failure to Accommodate by MPD Lodging his backpack at the Police Station

Plaintiff never requested an accommodation to have his backpack, or its contents, left with him at the jail. The failure to make a request for accommodation, when Plaintiff clearly had and used the ability to request other accommodations (specifically retrieving his charger) should preclude a finding in his favor on this claim.

Regardless, the City will present evidence that medical needs of Jackson County inmates are handled by Jackson County personnel, not by leaving bags of personal property and outside medication at the jail. In fact, City witnesses will testify that the Jackson County jail will not accept a backpack full of prisoner property at the jail. It should be noted that Plaintiff also claimed that Jackson County was responsible for providing him these same medical services to him at the jail, and it is public record that Jackson County recently paid Plaintiff $1.3 million to

Page 16 – DEFENDANT'S TRIAL MEMORANDUM

settle Plaintiff's claims against Jackson County.[1]  Likewise, this Court should note that Plaintiff withdrew any compensation claim against the City related to this medical issue, even though Plaintiff pursued a compensation claim against Jackson County over the same issue through said settlement. This Court can and should infer from those facts that any liability for catheterization and medication during Plaintiff's stay at the jail was in fact Jackson County's responsibility, not the City's, and Plaintiff has already been fully compensated for that issue.

## VI.    COLLATERAL ISSUES

### A.    Alleged damage to the wheelchair.

This Court's order on summary judgment preserved a compensatory damages claim to the wheelchair along with these other ADA counts. By dropping all claims for compensatory damages, Plaintiff should be seen as having abandoned this claim.

Even if the claim is not deemed abandoned, the evidence will show that Plaintiff's own repair invoice prevents Plaintiff from proving his case on this issue. The only documentation Plaintiff produced on this issue was an invoice from NuMotion, dated May 8, 2020, which clearly states "Repairs are caused by typical ADLs [activities of daily living] and not by user misuse or abuse."

### B.    The Unnecessary Nature of the Proposed Injunction.

Setting aside all the legal prohibitions against imposition of the requested injunction, the evidence will show that the requested injunction is duplicative of current efforts and practices in the City of Medford.  Plaintiff seeks a "listening session," but the evidence will show Plaintiff has already served on the City's stakeholder panel for its ADA Self-Evaluation and Transition Plan and had regular positive interactions with the City's ADA Coordinator. Plaintiff seeks training for patrol officers, but the evidence will show significant ADA training already exists in the form of lengthy, dedicated presentations in both 2023 and 2024; daily training bulletins; and policy acknowledgements. Plaintiff seeks "policy review," but evidence will show that the existing MPD Policy regarding the Americans with Disabilities Act is robust and industry-standard.

---

[1] https://www.opb.org/article/2026/05/24/jackson-county-settles-excessive-force-lawsuit-for-13-million/

It should also be noted that this case is not a class action. Despite language in the complaint asserting the need for an injunction to serve "individuals like Plaintiff who have mobility-related disabilities including wheelchair users," this claim is brought by one person and one person alone: Plaintiff John Malaer. Plaintiff was a resident of Medford at the time of his arrest in 2019. But during both his 2021 deposition and his 2022 deposition, Plaintiff was a resident of Brookings, Oregon, not Medford, and the City is unaware of any evidence that Plaintiff has relocated back to Medford in the subsequent years. The proposed injunction, including a six-year supervisory relationship between Plaintiff and the City, is onerous and sweeping. Even if injunctive relief were otherwise appropriate here, the Court has equitable discretion in determining what if any equitable relief to Plaintiff is appropriate. Granting a non-resident who lives a three-hour drive away from the City a six-year supervisory relationship over the City's administrative functions on the basis of a single interaction seven years ago, is not equitable.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff's claim should be dismissed because he does not have Article III standing to seek injunctive relief. No other relief is requested.

Alternatively, the Court should find after presentation of the evidence that Plaintiff has not proven he was discriminated against because of his disability.

DATED this 29th day of May, 2026.

> HUTCHINSON COX
>
> By:    s/Andrea D. Coit
>          Andrea D. Coit, OSB #002640
>          acoit@eugenelaw.com
>          Emily M. Perkins, OSB #222553
>          eperkins@eugenelaw.com
>          Of Attorneys for Defendant City of Medford

Page 18 – DEFENDANT'S TRIAL MEMORANDUM

## CERTIFICATE OF SERVICE

I certify that on May 29, 2026, I served or caused to be served a true and complete copy of the foregoing **DEFENDANT'S TRIAL MEMORANDUM** on the party or parties listed below as follows:

☒ Via the Court's Efiling System

☐ Via First-Class Mail, Postage Prepaid

☐ Via Email

☐ Via Personal Delivery

☐ Via Facsimile

Alicia Leduc Montgomery
alicia@leducmontgomery.com
Leduc Montgomery LLC
2210 W Main Street, Suite 107-328
Battle Ground, WA 98604

Joseph M. McMullen
joe@jmm-legal.com
Law Offices of Joseph M. McMullen
501 W Broadway, Suite 1510
San Diego, California 92101

Of Attorneys for Plaintiff

Eric B. Mitton
Eric.Mitton@cityofmedford.org
Tricia Hahn
triciahahn@msn.com
Medford City Attorney's Office
411 W 8th Street,
Medford, OR 97501

Of Attorneys for City of Medford

Kim E. Hoyt
khoyt@ghrlawyers.com
Jennifer M. Gaddis
jgaddis@ghrlawyers.com
Garrett Hemann Robertson P.C.
PO Box 749
Salem, OR 97308-0749

Of Attorneys for Defendants Jackson County,
Nathan Sickler, and Brian Kolkemo

HUTCHINSON COX

By:     s/Andrea D. Coit
Andrea D. Coit, OSB #002640
Emily M. Perkins, OSB #222553
Of Attorneys for Defendant City of Medford

Page 19 – DEFENDANT'S TRIAL MEMORANDUM